Billie Louise KNOX and Frank A. Knox,
Respondents,

v.

John SANDS and Mrs. Florence Stevens,
Appellants.

No. 52751.

Supreme Court of Missouri,
Division No. 2.

Nov. 18, 1967.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 11, 1967.

which they occupied as tenants of the defendants. The negligence stated was that defendants permitted a dangerous condition to be present on the rented premises which was unknown to plaintiffs.

Defendants contended they were not legally liable and that plaintiffs were guilty of contributory negligence as a matter of law. A trial resulted in a jury verdict for both defendants. The trial court sustained a motion for a new trial on the ground that the verdict was against the weight of the evidence. The defendants appealed. In the brief defendants contend first that the evidence was insufficient to sustain a verdict for plaintiffs and, second, that plaintiffs were guilty of contributory negligence as a matter of law.

The question to be determined on this appeal is whether there is substantial evidence in the record to support a verdict for plaintiffs. If so, the order of the trial court granting a new trial must be sustained unless the evidence shows that plaintiffs were guilty of contributory negligence as a matter of law.

The evidence disclosed the following statement of facts.

On June 8, 1964, plaintiffs and their four children were living in a house owned by the defendant Florence Stevens. The defendant John Sands, a brother of Mrs. Stevens, was at the time acting as her agent in the rental of the property. On this June 8, while the children were outside playing, Lyssa came in contact with a wire which carried 110 volts of electric current, causing her death.

We deem it necessary to relate the circumstances as to how and why the electric wire was where a child could come in contact therewith. In March 1963 John Sands, acting for his sister, rented the residence in question, together with outbuildings, a milk barn, and about 60 acres of land, to Homer Lowderman. Lowderman intended to operate a dairy farm and needed electric

I. Leon Kraft, Arthur J. Kase, Kansas City, for plaintiffs-respondents.

E. E. Thompson, Thomas A. Sweeny, Kansas City, for defendants-appellants, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

HENRY J. WESTHUES, Special Commissioner.

Plaintiffs, Billie Louise Knox and her husband Frank A. Knox, filed a petition in the Jackson County Circuit Court against John Sands and Mrs. Florence Stevens asking $25,000 in damages for the alleged wrongful death of their daughter, Lyssa Beth. Plaintiffs alleged that Lyssa, about two years and nine months of age, died of electrocution on June 8, 1964, at their home

current to operate the dairy equipment at the milk barn. He obtained permission from Sands to run electric wires from the house to the barn. Lowderman and his brother strung wires from the house by connecting wires to a fuse box in the basement of the house, thence the wires were run through the foundation at the top of the basement up the outside of the house, thence to a pole, a chicken house, another pole, thence to the barn where the wires were attached at a height of about fifteen feet. Sands was there at the time and helped by holding a ladder while Lowderman fastened the wires to the poles. All witnesses agreed that the wires were of poor quality, not sufficiently insulated and not proper wires to be used outside. In a number of places the insulation was badly worn. Lowderman soon discovered that 110 volts were insufficient to operate his equipment. He obtained permission from Sands and engaged an electrician to install wiring with 220 voltage. This was accomplished by running wires from a transformer located on the other side of a road to the milk barn. After this was installed, someone cut the old 110-volt wires at the barn but left the balance of the wire undisturbed. The result was that the current was severed at the barn but, from there to the house and the fuse box, the wires still carried 110 volts. There is no evidence that any one at any time thereafter disconnected the wires at the house or in the basement. There was evidence that a subsequent renter tested the wires and found no current therein. These wires served no purpose after the 220-volt equipment was installed. We may infer from the evidence that the installation of the wires from the house to the barn was poorly done. The wires sagged as time passed and, on June 4, 1964, were so near the ground that Lyssa, only two years and nine months of age, could and did reach them, causing her death.

Lowderman moved from the premises about September 1963. He obtained permission from Sands to sublet the house to a William Clark, Jr., who remained in the residence until March 1, 1964. Clark had had some experience with electricity and tested the wires. He testified he found no current present. However, there was no positive evidence that the wires were dead when Clark moved from the place.

After Clark vacated, Sands rented the residence and outbuildings, but not the milk barn or the land, to the plaintiffs in this case, who moved to the premises about March 15, 1964.

From the above evidence a jury would be justified in finding that the wires leading from the house to the milk barn created a very dangerous trap, likely to cause serious injury or death. Even if the fuse at the fuse box had been removed, a danger still would be present. Anyone not knowing the situation easily could replace a fuse and renew the danger. Ordinary care would have prompted the removal of the wires which served no useful purpose. Plaintiffs were told by Sands that the wires were dead.

It is our opinion that the evidence was sufficient to support a finding that defendants were negligent in permitting a dangerous situation to exist on the premises when it was rented to plaintiffs.

■ Whether plaintiffs were guilty of contributory negligence was a question for a jury to decide. The defendants in their brief argue that the danger was obvious and plaintiffs should have taken the proper precautions. It seems to us that in making this argument defendants assume that plaintiffs knew or should have known by the appearance of the wires that the danger was there. Defendants make the statement in their brief that "Persons of ordinary intelligence are presumed to know the dangers attending contact with electrically charged wires." Cases were cited, such as Hamilton v. Laclede Electric Cooperative, Mo., 294 S.W.2d 11, and Burroughs v. Union Electric Co., Mo.App., 366 S.W.2d 69. In those cases the parties injured had

come in contact with high tension wires located on utility poles while working near the wires. The court in each case held that the danger was obvious. Of course, anyone of any intelligence would know of the danger in such circumstances.

■ The facts in the case before us are quite different. In the first place, as we view the evidence it is doubtful if a person of ordinary intelligence would surmise that the wires in question would be charged with electric current. Furthermore, on the day the rental contract was made, plaintiffs asked defendant Sands what the wires were for. Sands informed plaintiffs that they were dead. Sands promised to have them removed. Thereafter, in June, as the evidence disclosed, on the Friday before the Monday when Lyssa met her death, plaintiffs' son, about six years old, told his mother he had received a shock when he touched the wire. Mrs. Knox informed her husband of what the boy had said. On Saturday Mrs. Knox informed Mr. Sands and he told Mrs. Knox again that the wires were dead but that he would remove them on Monday. Sands failed to do anything. The mother instructed the children to stay away from the wires. However, on Monday afternoon, while the mother was busy in the house, Lyssa came in contact with the wire, causing her death. Defendants claim that plaintiffs could have removed the fuse in the fuse box and that would have cut off the energy. Many persons do not know much about electricity. It was not shown that plaintiffs knew the source of the electricity feeding the wires. We must keep in mind that the wires ran from the house to the milk barn which was not rented to plaintiffs. It is questionable whether plaintiffs had the right to remove the wire.

Defendants say that Mr. Knox could have raised the wires by placing a board under them. It is claimed some lumber was lying nearby. Raising an uninsulated electric wire with a board is not very safe either. If a wet board were used, the party

using it might receive a surprise in addition to a shock.

Considering the case from every viewpoint, it is our opinion that the trial court was justified in granting a new trial on the theory that the verdict was against the weight of the evidence.

The order is affirmed and the cause remanded.

PER CURIAM:

The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the court.

All concur.

### ON MOTION FOR REHEARING OR TO TRANSFER TO THE COURT EN BANC

PER CURIAM.

Respondents filed a motion for rehearing or, in the alternative, to transfer to the court en banc.

In the motion it is said that "The Court, in holding, page 4 of the opinion, that defendants were negligent in permitting a dangerous situation to exist on the premises when rented to plaintiffs, overlooked and misinterpreted the applicable law, in that it is not the law of Missouri, and never has been, that a person renting or leasing premises is under a duty to exercise ordinary care to make the premises reasonably safe for occupancy by the tenant."

To sustain their contention, respondents cite and quote from the case of Reckert v. Roco Petroleum Corp., Mo., 411 S.W.2d 199. Note what respondents say in their motion: "The latest expression of the Supreme Court on the subject is announced in (Reckert v. Roco Petroleum) * * * wherein the general rule is stated to be '* * * that the landlord is not liable to the tenant or to those on the premises under the tenant's title (the position oc-

cupied by instant plaintiffs' minor child) for injuries caused by a dangerous condition, whether natural or artificial, *which existed at the time the tenant took possession* under the lease * * *' (1. c. 205 (5)). (Emphasis ours)."

 Examining that case and particularly page 205, paragraph (5), we find that after the court made the statement respondents quoted, the court went on to say: "This general rule is subject to an exception where at the time the lease is executed there is a dangerous condition of the premises involving unreasonable risk of physical harm to persons on the premises, which is known to the landlord and not known to the tenant and not discoverable by the tenant in the exercise of ordinary care. In such case there is a duty on the landlord to disclose to the tenant the existence of the dangerous condition and he is liable to the tenant or the tenant's invitees for injuries or death resulting from such condition if the landlord fails to disclose them to the tenant or conceals their presence from the tenant." Numerous authorities are there cited in support of the ruling by the court.

That law is applicable to the situation in the case before us. When the Knoxes were shown the premises, Mr. Knox asked about the wires and was informed by Sands that they were dead. Mrs. Knox indicated she wanted them removed. Sands, one of the defendants, promised to remove them. It was not done. Later, on Friday, before the little girl met her death, plaintiffs' son, six years of age, told his mother he had received a shock from the wires. The mother called Mr. Sands and he again assured her the wires were dead but that he would remove them on Monday. Nothing was done. On Monday afternoon, while the mother was busy in the home, the little child touched the wires, causing her death.

We reaffirm our holding that a case was made for a jury to decide. Other matters complained of in the motion were disposed of in the principal opinion.

The motion for rehearing or to transfer to the court en banc is overruled.