Clifford YOUNG, Helen Young, Kirk Biere, and Marilyn Biere, as Statutory Trustees for Best Buy Home Center, Inc., formerly a Missouri Corporation, Appellants–Cross–Respondents,

v.

**KANSAS CITY POWER AND LIGHT COMPANY,**
Respondent–Cross–Appellant.

No. WD 40229.

Missouri Court of Appeals, Western District.

April 25, 1989.

As Modified May 30, 1989.

Motion For Rehearing and/or Transfer to Supreme Court Denied May 30, 1989.

Application to Transfer Denied Aug. 1, 1989.

Dale C. Doerhoff, Cook, Vetter and Doerhoff, Jefferson City, for appellants-cross-respondents.

Gary G. Sprick, Fayette, for respondent-cross-appellant.

Before SHANGLER, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

Plaintiffs as trustees for Best Buy Home Center, Inc., a former Missouri corporation,[1] sued Kansas City Power and Light Company (KCPL) for damages incurred when the building Best Buy occupied was damaged by a fire and the contents were destroyed. The suit was based on a claim that the fire was electrical in origin and the result of a shorted circuit in the KCPL meter box. KCPL disputed the fire's origin and also contended that faulty interior wiring was a contributing factor in the loss. The case was tried to a jury which found damages to be in the amount of $230,000.00 with fault apportioned 60% to Best Buy and 40% to KCPL. Both parties appeal.

The Best Buy store, offering hardware and miscellaneous merchandise for sale at retail, was located in a 75 foot by 50 foot building in Glasgow, Missouri. The exterior walls were concrete with reinforced steel. Atop the concrete walls were steel beams to which were fastened $2 \times 8$ plates bolted to the beams. These plates served to anchor roof joists spaced at 16 inch intervals. The roof was formed by wood sheathing fastened to the joists and coated with tar. Electrical wiring enclosed in steel conduit was, at some points, secured to the $2 \times 8$ plates and at one point, according to Best Buy, was in contact with a bolt which fastened the plate to the steel beam. It was Best Buy's theory that the fire started when current in the conduit generated heat by contact with the anchor bolt. The conduit was itself energized, according to Best Buy, because of a fault in the meter box.

The evidence in the case was undisputed that on October 25, 1982, an employee of the telephone company was working in an alley east of the Best Buy store, and as he was driving his truck through the area, the truck ladder rack struck one of the electric meters which served the store. The force of the impact knocked the meter itself from the metal meter box and disrupted power service to the Best Buy store. After that incident, an employee of KCPL replaced the meter and resealed the box. The damaged box was not replaced.

---

1. The corporate charter of Best Buy was forfeited January 1, 1986. Plaintiffs constitute the last elected officers and directors of the corporation and they therefore constitute its trustees.

The meter box in this case, and that generally used by KCPL, is a container with a face cover in which a circular opening allows display of the meter. Inside the box are two wire support bails secured by rivets. When a meter is installed, it is plugged into the box, the meter rests on the support of the bails and the bails fit inside the bottom ring of the meter. The closing of the box face cover holds the meter in place from the front. A meter normally cannot be removed from a meter box without first lifting the face cover or lid of the box. For the meter to come out without removing the box cover, it would be necessary for the meter to be rotated, pushing down on the bails. That process could pop out the rivets holding the bails. Best Buy postulated that had occurred when the meter box was struck by the telephone company truck.

On September 2, 1984, some twenty-three months after the incident with the telephone truck, a fire occurred at the Best Buy store. When firemen arrived, they encountered dense black smoke and heat, but for some time they were unable to locate the fire itself. Eventually the fire burned through the roof on the west side of the building about midway from the front of the structure. It continued along that wall to the rear and across to the east wall where it moved back to the front before it was contained.

Soon after the fire had been brought under control, a KCPL employee arrived and disconnected electric service in the area. To restore power to other customers, it was necessary for him to enter the Best Buy meter box. When he did so, he found the left meter bail in contact both with the normally neutral part of the box and also with the energized part. The rivets normally holding the bail were not in place. There was indication of electrical arcing. The undisturbed seal on the meter box indicated that it had not been entered since the meter had been replaced in October of 1982. The facts stated above were not in dispute. The question of how the fire originated and whether it was attributable to some malfunction in the KCPL meter box was. The answer to the question depended on reconstruction of events, assumptions and expert opinion. An understanding of the basis for Best Buy's cause of action requires a somewhat extended recapitulation of the thesis proposed by Best Buy's expert witness, Dr. Wes Sherman.

Dr. Sherman was given the facts summarized above and he also conducted his own investigation, particularly with respect to a section of conduit in which the wires had completely melted. It was Sherman's conclusion that the conduit had been in contact with one of the bolts used to hold the wood $2 \times 8$ plates to the steel roof support beams and a short circuit had started the fire. This was the result of an electrical current between the conduit and the bolt generating enough heat to ignite the wood plate. The source of that current was, according to Sherman, the abnormally positioned bail in the KCPL meter box.

According to Sherman, the path of the current which started the fire ran from the point of contact between the conduit and the bolt to a junction box, through armored cable to the furnace where it connected to a neutral wire, then back through the neutral wire to the electric service panel, through the wall to the meter base to the grounded portion of that base and then back to the energized line. The latter connection was made because the misplaced meter bail served as a conductor between the neutral or grounded portion of the meter base and the energized line. The bolt in the beam was connected to ground, completing the circuit, because the beam rested on the concrete wall containing reinforcing rods.

Under the above analysis, Dr. Sherman gave his opinion that the transfer of current depended entirely on the arcing which occurred when the meter bail was dislodged and the eventual welding of the bail touching on one side the normally neutral part of the meter box and on the other side, an energized point. Had that welding not occurred, Dr. Sherman did not believe a fire would have resulted.

## THE APPEAL BY KANSAS CITY POWER AND LIGHT

■ In their first point, KCPL contends plaintiffs did not make a submissible case

because they did not prove the meter support bail was dislodged when the box was struck by the telephone company truck.

The evidence most favorable to plaintiffs, and essentially uncontested, was that the meter box was struck by the truck with sufficient force to knock out the meter with the lid still in place. For this to occur, the rotation of the meter creates pressure on the bails sufficient to pop out the rivets securing them. The KCPL repairman, Gilkeson, who replaced the meter did not remember checking the bails and he does not routinely do so. When the box was opened after the fire, one meter bail was abnormally positioned. The seal on the meter box placed there by Gilkeson was still in place indicating that no one had entered the box after Gilkeson installed the new meter. This evidence entitled the jury to conclude that the damage to the bail was caused when the meter box was struck by the truck and the damage was not detected when Gilkeson installed the new meter. The point is denied.

In its second point, KCPL also contends plaintiffs failed to make a submissible case because they did not prove the loose meter support bail was the cause of the fire. Although KCPL recognizes that Dr. Sherman so testified, they discount that testimony as not having probative value because it was based, so they say, on assumed facts not supported by the evidence.

The thrust of the KCPL argument rests on facts it is contended were ignored by Dr. Sherman. There was evidence that sparks were seen in the Best Buy building three and one-half hours before the fire. There was also evidence, including Dr. Sherman's acknowledgement, that if the full current from the KCPL line had run through the #9 gauge wire of which the meter bail was composed, the wire would have melted. According to KCPL, these facts render Dr. Sherman's reconstruction of the event implausible.

The origin of the fire as attributable to current passing through the meter bail and yet leaving the bail itself intact, although welded to the contact points, was explained by Dr. Sherman on the basis of resistance which reduced the voltage. According to Dr. Sherman, the current loop which he assumed was one which included conductivity by the building wall and its components of reinforcing rods. He measured the resistance of the wall and found it to be 300 ohms. At that level of resistance, the current would amount to four-tenths of an ampere which would not be sufficient to melt the meter bail. It would, however, be sufficient to ignite flammable material, such as the wood plate, at a small point of contact such as that between the conduit and the bolt.

Dr. Sherman's opinion as to the origin of the fire was compatible with the evidence in the case. If the jury chose to accept that opinion, it was a sufficient basis on which to return a verdict as it did. The point is denied.[2]

In a third and final point, KCPL contends plaintiffs' verdict directing instruction was in error and was prejudicial to defendant's case. The first portion of the argument is directed to a contention that the instruction was inappropriate where no submissible case was made. That contention has been rejected in the previous portion of this opinion which holds that plaintiffs did make a submissible case.

The second aspect of the argument expresses the complaint that the instruction did not present the essential element of the case for the jury's decision, that is, whether the meter bail was loose and if so, when it became so, thereby creating some duty on KCPL to make replacement. Also ob-

---

2. Plaintiffs contend in their brief that defendant did not preserve the issue of whether a submissible case was made. The argument is based on the fact that defendant's motion for directed verdict at the close of plaintiffs' case was not specific, (*McRaven v. F-Stop Photo Labs, Inc.,* 660 S.W.2d 459, 461 (Mo.App.1983)), and the further fact that the record shows no motion for directed verdict filed at the close of all the evidence, (*Ball v. American Greetings Corp.,* 752 S.W.2d 814, 819 (Mo.App.1988)). Defendant says an oral motion was made. Although it is doubtful whether the issue was preserved, we do not reach that question in view of the holding that plaintiffs did make a submissible case.

jected to is the combination in the instruction of conceded and disputed facts.

The portion of the instruction to which KCPL takes exception read as follows:

First, defendant Kansas City Power and Light Company failed to replace the meter box after it should have known that the meter support bail was loose * * *.

■ A Not–In MAI instruction, as was the above, must submit only the ultimate fact issues, be within the general scope of the pleadings, not assume issuable facts and be understandable to a reasonably intelligent jury. *Zipp v. Gasen's Drug Stores, Inc.*, 449 S.W.2d 612, 617 (Mo.1970). An instruction authorizing a verdict must require a finding of all ultimate facts necessary to sustain the verdict except those which have been unmistakenly conceded by both parties. *Galemore Motor Co. v. State Farm Mut. Auto. Ins. Co.*, 513 S.W.2d 161, 167 (Mo.App.1974). It is reversible error for an instruction to assume or ignore a controverted fact. *Flo–Products Co. v. Valley Farms Dairy Co.*, 718 S.W.2d 207, 208 (Mo.App.1986).

■ It was, of course, undisputed that KCPL did not replace the meter box after it was damaged. Although KCPL argues otherwise, plaintiffs established by circumstantial evidence that the support bail was loosened when the meter box was struck by the telephone company truck. This follows from the following sequences of events: (1) when the meter box was opened after the fire, the bail was in an abnormal condition with a part touching the neutral portion of the box and part in contact with an energized line, (2) no entry had been made to the meter box since the meter was replaced by repairman Gilkeson as evidenced by the undisturbed seal, (3) when the meter was knocked from the box by the telephone company truck, the bail was necessarily distorted, it being otherwise not possible to remove the meter without releasing the meter box cover. There was no evidence, circumstantial or otherwise, to explain the condition in which the support bail was found, except that it occurred when the box was struck by the telephone company truck.

The issue for the jury was not whether or when the support bail was popped from its rivets, assuming also that the jury accepted plaintiffs' theory of causation of the fire, but whether KCPL was negligent in not discovering the condition of the bail and replacing the meter box at the time the new meter was set. Under the evidence, the jury was entitled to find that repairman Gilkeson was negligent when, in the face of the damage attributable to dislodgement of the meter, he did not inspect the support bails and discover the need to replace the meter box. There was no defect in plaintiffs' verdict directing instruction. The point is denied.

### THE APPEAL BY BEST BUY HOME CENTER

Plaintiffs raise five points of error on their appeal, all but one of which attack the comparative fault instruction submitted by KCPL. The gist of that instruction was a direction that the jury charge plaintiffs with a proportion of the loss if the jury concluded that improper grounding of the wiring in the building and inadequate circuit breakers directly caused or directly contributed to cause the damage. Plaintiffs first contend there was no evidence presented to support the instruction.

■ A comparative fault instruction must have substantial evidence to support it. *Jones v. Freese*, 743 S.W.2d 454, 458 (Mo.App.1987). The evidence is viewed in a light most favorable to the party offering the comparative fault instruction. *Finninger v. Johnson*, 692 S.W.2d 390, 394 (Mo.App.1985). Negligence is but one type of fault; fault also includes avoidable consequences, including mitigation of damages. *Love v. Park Lane Medical Center*, 737 S.W.2d 720, 724 (Mo.banc 1987).

■ George Ranallo, an electrical engineer, testified for KCPL as to the wiring defects in the Best Buy building. According to Ranallo, the main circuit breakers were not grounded, a neutral conductor, which is designed to carry current between

two phase conductors, was improperly used as a ground, no mechanical or electrical connectors were used between the meters and the circuit breakers and there was no interior grounding of the wiring system. The circuit breakers were inadequate. The wiring system to the heating plant was protected by a 100 amp circuit breaker when it should have been 20 amp. A 100 amp circuit breaker is hazardous because it allows too much current to run over the wire causing the wire to burn before the circuit is broken. The wiring to an electric heater was not protected by a connector permitting the disconnector wires to short. Ranallo testified that the interior wiring of the building presented an unusual and dangerous situation which would contribute to the spread of an electrical fire.[3]

From the testimony summarized above, a jury could have found that inferior and inadequate wiring and electrical devices inside the Best Buy building resulted in additional short circuits after the fire began, caused the fire to spread and thereby increased the extent of the damage for which compensation was sought in this suit. The evidence therefore supported the comparative fault instruction.

Plaintiffs next argue that because defendant took the position that the fire did not start as a result of the misplaced meter bail, and therefore there was no liability, defendant may not also instruct the jury on comparative fault. The contention seems to be that a defendant is not entitled to a comparative fault instruction unless he concurrently acknowledges some responsibility for the loss.

■ It is, of course, well recognized that a defendant may rely on multiple defenses even though they may be inconsistent. Indeed, a defendant must plead all defenses available even though they be inconsistent. *Grippe v. Momtazee*, 705 S.W.2d 551, 554

(Mo.App.1986). In *Tomlin v. Alford*, 351 S.W.2d 705 (Mo.1961), the defendant was permitted to submit a contributory negligence instruction where his answer pleaded both a general denial and contributory negligence. In *Van Dyke v. Major Tractor & Equipment Co.*, 557 S.W.2d 11, 15 (Mo. App.1977), the court cited authority approving the joining of converse and affirmative defense instructions in a negligence case.

■ An affirmative defense is one which avers that even if the allegations of plaintiff's petition be proved, the plaintiff cannot prevail because additional facts allow defendant to avoid legal responsibility. *World Enterprises, Inc. v. Midcoast Aviation Serv., Inc.*, 713 S.W.2d 606, 608 (Mo. App.1986). A comparative fault instruction rests upon the concept of an affirmative defense, that is, facts tending to show that acts or omissions of the plaintiff contributed to plaintiff's loss either to negate or to reduce defendant's legal responsibility. In the present case, KCPL pled and presented evidence, as discussed previously in this opinion, supporting the theory that damages from the fire were increased because of wiring defects in the Best Buy building. That amounted to an affirmative defense now submitted under *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.banc 1983), in the form of a comparative fault instruction.

■ It is correct, as plaintiffs argue, that KCPL pleaded and introduced evidence to contest the source and origin of the fire as attributable to any negligence on its part. Based on that evidence, KCPL would have been entitled to a converse instruction in addition to the instruction on comparative fault. KCPL chose not to offer a converse instruction relying instead on the affirmative defense. The comparative fault instruction was properly given

---

**3.** The testimony by witness Ranallo on this point was as follows:

Q. (By Ms. Shannon) In your opinion would the grounding have caused the fire, the lack of grounding caused the fire?
A. No.
Q. Would it have had any impact on the spread of the fire?

A. Once the thing starts shorting out and grounding out from the fire itself, yes, then it will all travel back and go back to your mains, but it does not go upstream, always downstream, that is why the circuit breaker is burned up like it is.

with or without a converse instruction on the issue of causation.

■ Plaintiffs next claim their recovery should not have been reduced on the ground of comparative or contributory fault because Best Buy was merely a tenant in the building and it had no responsibility for the wiring. Moreover, plaintiffs say there was no evidence Best Buy had any knowledge of the wiring defects.

The building Best Buy occupied was an open warehouse in 1977 with very little electric wiring in place. In that year, the partnership of plaintiff, Clifford Young, and his father, doing business as Young Builders Supply, moved into the building. Young Builders Supply employees wired the building and plaintiff Clifford Young himself installed the meter box. He testified at trial that he supervised the wiring to meet the city electrical code. When Best Buy was incorporated in 1981 and moved into the building, the wiring was essentially the same as it had been under Young Builders Supply occupancy. Clifford Young's testimony and the information Dr. Sherman testified Young gave him about the wiring demonstrated intimate acquaintanceship with the building wiring.

The claim that Best Buy had neither knowledge of nor responsibility for the wiring in the subject building is palpably untenable. The case plaintiffs cite in support of the point, *Knox v. Sands*, 421 S.W.2d 497 (Mo.1967), is not in point because in *Knox*, the plaintiff-tenant relied on an affirmative representation by the landlord as to the condition of a particular sagging electric power line.

Finally, as to the points regarding the comparative fault instruction, plaintiffs contend the court should have granted their motion to set aside that part of the verdict which charged plaintiffs with 60% of the fault and enter judgment for the full amount of the damages. They seek the same relief here contending that a new trial need not be ordered but this court can grant relief by ordering entry of judgment for plaintiffs in the full amount of the verdict, $230,000.00.

Whether this court could direct entry of such a judgment is a question of first impression. The likely answer is that it cannot because of the blending of issues of fault and damages under the *Gustafson* doctrine. *See Phillips v. Lively*, 708 S.W.2d 369, 373 (Mo.App.1986). In any event, however, the issue need not be decided in this case. As the foregoing discussion has demonstrated, comparative fault was a proper issue in the submission to the jury. There was no error in the instruction and the verdict was proper under the evidence.

■ The last contention of error raised by plaintiffs charges that the verdict assessing 60% of the fault against plaintiffs may not stand because it is the product of speculation and conjecture. They say any attribution of fault based on inadequacies of the wiring lacked a probative nexus to the damage. This point was not preserved for appellate review because it was not included in the motion for new trial.

■ It may be argued that the point is an elaboration on the prior contention that contributory fault was not a submissible issue. This has previously been considered and rejected. There was evidence in the case of sparks flying, burned breaker boxes and burned and melted wiring. Expert opinion evidence established, if accepted by the jury, that lack of grounding allowed the fire to spread and that inadequate circuit breakers permitted too much current to flow over the wires after the initial electrical fault producing further burning of the wires. The point, if regarded as an adjunct to other points, is without merit.

The judgment is affirmed.

All concur.