**UNIVERSAL UNDERWRITERS INSURANCE COMPANY,**
Appellant,

v.

**Myron E. MICHAEL, Patricia Michael, William Dirk Vandever, Defendant Ad Litem for Charles Brock, Deceased, Respondents.**

No. WD 41144.

Missouri Court of Appeals,
Western District.

Oct. 17, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 28, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Sanford Goffstein, St. Louis, for appellant.

Duane J. Fox, Sylvester James, Jr., Kansas City, for respondents.

Before GAITAN, P.J., and
MANFORD and ULRICH, JJ.

GAITAN, Presiding Judge.

Plaintiff-appellant, Universal Underwriters Insurance Company ["Universal"] appeals from a declaratory judgment concerning coverage under an insurance policy issued to its insured Cable Chevrolet, Inc. The trial court held for defendants-respondents. We affirm.

The fatal accident giving rise to this dispute occurred on May 20, 1984 and involved a Mazda RX–7, which was owned by Universal's insured, Cable Chevrolet, as part of its stock in trade and which was being used by one of Cable's salesmen, Gael Kowalski ["Kowalski"] as a demonstrator

model. At the time of the accident, Kowalski and two of his friends, Charles Brock ["Brock"] and Kevin Michael ["Michael"], were riding in the two-seater car with Brock in the driver's seat, Michael in the passenger seat and Kowalski "on the hump."

On the evening prior, Kowalski arrived at Brock's home at approximately 9:00 p.m. Kowalski, Brock and Michael obtained a case of beer and a bottle of Scotch and began drinking at about 9:30 p.m. Through the course of the night they neither slept nor ate and consumed "a lot" of the beer and one-half to three-fourths of the bottle of scotch.

At around 6:00 a.m. the next morning of May 20th, Kowalski, Brock and Michael left Brock's to go to a restaurant to get something to eat. Kowalski began driving until Brock and Michael insisted on changing drivers, stating Kowalski was drunk and crossing the center line. Realizing he was possibly impaired, Kowalski gave up the steering wheel to Michael who drove to the restaurant.

After eating, Kowalski still felt he was incapable of driving, and as they left the restaurant Brock assumed the driver's position, although Kowalski admitted that he could not really judge whether Brock was capable of driving safely. Soon after leaving the restaurant, the Mazda apparently left the road and crashed. Michael and Brock were killed. Kowalski was seriously injured.

As a result of the accident, the parents of Michael instituted a wrongful death action against Kowalski, Cable Chevrolet, and Brock, through a court-appointed defendant ad litem, William Dirk Vandever ["Vandever"]. Vandever subsequently made formal demand upon Universal to defend him as defendant ad litem of Charles Brock under Cable Chevrolet's policy.

Denying that Brock was an "insured" under its policy with Cable Chevrolet, Universal filed a petition for declaratory judgment with the circuit court of Jackson County in Kansas City and joined as defendants, Vandever as defendant ad litem for Brock, Myron Michael and Patricia Michael. By this action, Universal sought the court's determination as to the rights and duties of the parties under the policy, a declaration that the policy did not provide coverage for Brock "under any circumstances" and that plaintiff had no duty to defend or indemnify Vandever as Brock's defendant ad litem in the underlying wrongful death suit.

In its petition for declaratory judgment, Universal quoted from the two coverage sections of the policy, Part 500 and Part 900, including language from the endorsements relevant to these sections. Universal asserted that Brock was not an "insured" under any provisions of the policy because he: (1) was not a named insured under any sections of the policy; (2) was not a lessee of the vehicle; (3) was not using the car within the scope of permission of any of the named insureds; and (4) was not required by law to be an insured, as the policy was never certified pursuant to the Motor Vehicle Safety Responsibility Law, Sections 303.170, 303.180 or 303.190, RSMo. Supp.1984. Universal concluded it thus had no obligation to defend or indemnify Brock's defendant ad litem.

Universal acknowledges that as an employee of Cable Chevrolet, Kowalski would be an "insured" under the policy and there would be coverage if Kowalski had been operating the motor vehicle. The issue submitted to the trial court by Universal's petition, however, was whether there was insurance coverage for Brock, if it was determined, as claimed by Kowalski, that Brock was the driver at the time of the accident.

By agreement of the parties, the specific factual question of the "scope of permission" was submitted for jury determination. At the close of the evidence, the jury found in favor of the defendants, holding that at the time of the accident, Brock was operating the car within the scope of Cable's permission. The trial court accepted the verdict of the jury and thereafter entered its judgment entry which stated, in part:

... 8. That the Universal Underwriters Insurance Company's policy no. 485907B was in effect on May 20, 1984.

9. That Plaintiff Universal Underwriters Insurance Company filed this declaratory judgment action seeking a declaration as to whether its policy no. 485907B provides coverage for William Dirk Vandever as legal representative of Charles Brock, deceased.

10. That if Charles Brock was driving the Cable Chevrolet, Inc. auto at the time of the collision, then he was driving the auto within the scope of permission granted by the auto owner, Cable Chevrolet, Inc., to Gael Kowalski, and *Charles Brock was therefore an insured under Universal Underwriters Insurance Company policy no. 485907B.*

11. That Universal underwriters Insurance Company has a duty to defend the legal representative of Charles Brock, deceased, from all claims arising out of the May 20, 1984 collision and, if Charles Brock was driving the auto at the time of that collision, Universal Underwriters Insurance Company has a duty to indemnify the legal representative of Charles Brock, deceased, from all claims arising out of such collision to the extent of the monetary limits of coverage provided in such policy.

[Emphasis added.] Plaintiff filed post-trial motions opposing the verdict, but they were denied. This appeal follows.

Appellant argued that this Court's decision in *Universal Underwriters Ins. Co. v. Davis*, 697 S.W.2d 189 (Mo.App.1985) is dispositive of the issue in the case at bar. In *Davis*, Universal Underwriters Insurance Co. sought a declaratory judgment that its policy (the same policy at issue in this case) did not provide coverage to the son of a car salesman who was involved in an accident. In this case, Universal argues that the *Davis* decision conclusively determined the scope of coverage available to a second permittee driver under the omnibus clause of Part 900 of its policy. Appellant's argument, however, failed to account for crucial variances in the facts of the two cases.

In *Davis*, the appellate court noted that salesman Jack Davis' use of the demonstrator was governed by a written "Employee Demonstrator Agreement" with his employer, H.E. Miller Oldsmobile. The agreement controlled Jack Davis' use of the car and explicitly stated: "[m]embers of the employee's family are prohibited from using the automobile for personal use." *Universal Underwriters Ins. Co. v. Davis*, 697 S.W.2d at 191. Further, at trial, Jack Davis admitted that he was well aware of the terms of the "Employee Demonstrator Agreement" and its restrictions against any use of the demonstrator by his family members for their personal convenience. Davis testified that he knew he was in violation of the agreement when he allowed his son to drive the demonstrator to a personal social function. *Id.*

Cable Chevrolet did not have a written "Employee Demonstrator Agreement." In contrast to the clear, distinct and written agreement H.E. Miller Oldsmobile had with its salesman Jack Davis, Steve Cable testified that Cable Chevrolet's policy regarding who was qualified to drive its cars was left to the judgment of the salesperson. In *Davis* the court decided that the written "Employee Demonstrator Agreement" indicated there was:

no evidence in this case implying a willingness by Miller Oldsmobile for salesman Davis to let members of his family use the demonstrator for personal errands. Any contrary result flies directly in the face of the explicit agreement of the parties to the contrary.

*Davis*, 697 S.W.2d at 194. There was never such a clear understanding regarding the use of the demonstrator Brock was driving at the time of his death.

Kowalski testified at trial that the demonstrator car had been given to him for business and personal purposes. He also testified that his supervisors at Cable told him he could "use the car or you could let other people use the car as long as they appeared to be a safe driver...." Whether or not a person could use a demonstrator car was totally left to Kowalski's judgment. The explicit and written limitations

placed on salesman Jack Davis' use of the demonstrator in *Davis* are simply not present in the case at bar.

■ Charles Brock was operating the demonstrator car as a second permittee of Cable Chevrolet. Cable's permission to operate the car can be implied from the lack of restrictions placed on its first permittee, Gael Kowalski, which indicated a willingness to allow others to drive the car. *See United States Fidelity and Guaranty Co. v. Safeco Ins. Co. of America*, 522 S.W.2d 809, 816 (Mo. banc 1975).

In *United States Fidelity and Guaranty Co.*, a declaratory judgment action was filed to determine insurance coverage where a second permittee was driving a car. A mother, the named insured, gave her daughter permission to use her car and the daughter permitted a third person, Chapman, to drive. Chapman was then involved in an injury accident. The issue was whether Chapman was using the automobile with the permission of the named insured and was, therefore, insured under the omnibus clause of the policy. *Id.* at 813. The omnibus clause of the insurance policy read:

> The following are Insureds under part 1:
> a. With respect to the owned automobile,
> (1) the named insured and any resident of the same household,
> (2) *any person using such automobile with permission of the named insured,* providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

*Id.* at 811 (emphasis added).

As a threshold issue, the Court held that the language, "any person" in Section (2) of the policy was broad enough to include unknown persons. *Id.* at 813. Thus, the Court held that the named insured did not need actual knowledge that Chapman was driving the automobile for coverage to exist. *Id.*

The Court held that the named insured in *United States Fidelity and Guaranty Co.* gave her daughter such "broad and unfet-

tered" use of the automobile that the daughter was authorized to let others drive within the scope of the insured's permission. *Id.* at 813. The Court determined that Chapman was a second permittee and was operating the car with the implied permission of the named insured.

Universal acknowledges that Cable Chevrolet's salesman, Gael Kowalski, would be an "insured" under its policy if he was operating the demonstrator. The testimony of Steve Cable, a named insured, at trial indicated that Kowalski was given broad and nearly unfettered use of the demonstrator for his business and personal use. Kowalski's permission to use the car was so unrestricted that his authority to allow Charles Brock to drive the car is implied.

In reaching its decision in *United States Fidelity and Guaranty Co.*, the Court articulated four basic factors, the resolution of which determine whether a second permittee is covered by an omnibus clause:

> 1. The permission must come from the named insured, not simply from the first permittee.
> 2. Permission of the named insured to the second permittee may be implied as well as express.
> 3. Permission may be proven by circumstantial evidence, but the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation.
> 4. Permission from the named insured can be found or implied from a course of conduct which evidences the willingness of the names insured to permit the first permittee to authorize others to drive, such as the broad unfettered use given by the named insured to her daughter in this case.

*Id.* at 816.

When these factors are applied to the facts of the case at bar, it becomes clear that Charles Brock was an authorized second permittee and, therefore, an insured under Universal's policy.

### 1. *Permission must come from the named insured.*

Steve Cable, the vice-president of Cable Chevrolet and a named insured under Universal's policy, testified that under the circumstances of this case, he delegated his permission for Brock to drive the demonstrator. At trial, Steve Cable was asked:

Q. (By Mr. James). Do you delegate your permission to the person who is with your intoxicated salesman to drive that car.

A. I would.

In this case, Charles Brock was driving Kowalski's demonstrator car because he appeared to be less intoxicated than the others. Kowalski testified that after breakfast he handed Brock the keys to the car and told him to drive. Steve Cable testified that if one of his salesmen were intoxicated, he expected a person with the intoxicated salesman to make a decision that the salesman could not drive. He also expected the salesman to give up the keys to the car and allow the other person to drive. The first factor is easily and clearly resolved in favor of respondent.

### 2. *Permission may be implied as well as express.*

Steve Cable's testimony conclusively determines that he gave implied permission to anyone with an intoxicated salesman to operate the demonstrator.

### 3. *Permission may be proven by circumstantial evidence.*

The circumstances of this case indicate that on the night of the accident Steve Cable wanted someone other than Gael Kowalski to drive his demonstrator. Cable testified that he hoped others who were not intoxicated would take it upon themselves to drive when they determined that the salesman was incapable of driving safely.

### 4. *Permission from the named insured can be implied from a course of conduct.*

Cable Chevrolet gave its salesmen nearly unfettered use of its demonstrator cars.

Steve Cable admitted that whether or not a third person could drive the car was a judgment call he expected his salespeople to make. Where the named insured relies on another to make a judgment call on such issues, he should not be heard to complain when the salesman's judgment produces a negative result. If Cable Chevrolet wanted to limit the exercise of its employees' discretion, it could have placed restrictions on the use of the demonstrator.

■ Permission can be derived from negative, as well as positive, factors. In *Kemp v. MFA Mutual Ins. Co.*, 468 S.W.2d 700 (Mo.App.1971), the court held that the absence of an explicit restriction on the use of an automobile is a strong indication that such use is permissible. *Id.* at 705. There were no substantive explicit restrictions placed on the use of the demonstrator car in this case. There is a strong indication that Brock's use of the car under the circumstances of this case was a permitted use.

Additionally, in *Bourne v. Manley*, 435 S.W.2d 420 (Mo.App.1968), the court found that implied permission can be derived from a lack of objections or specific restraints on the use of the car, thus, allowing the permitted use. The court stated that "[p]ermission may have a negative as well as an affirmative implication, in that a permitted act may be one not specifically prohibited contrasted to an act affirmatively and specifically authorized." *Id.* at 429 (quoting *Brower v. Employers Liability Assurance Co.*, 318 Pa. 440, 177 A. 826, 829 (1935)). In fact, the court held that because implied permission is usually derived from prior conduct, it is possible to extend permission to uses of which the insured has no notice. *Id.* at 429 (citation omitted).

Cable Chevrolet failed to place explicit prohibitions on Kowalski's use of the car other than to restrict travel to the Kansas City metropolitan area. Kowalski was authorized to use the demonstrator for his convenience without any meaningful limitations. Further, Kowalski was given the freedom to determine who, other than himself, was "qualified" to drive the demon-

strator. Cable Chevrolet gave its implied permission for Block to drive the car when it granted Kowalski broad and unfettered discretion to decide who could drive the car.

*As an employee of Cable Chevrolet, Gael Kowalski was an insured under the Universal policy issued to Cable Chevrolet.*

### 1. *Part 500*

Kowalski is insured under Parts 500 and 900 of Universal's policy. Part 500 provides coverage for garage operations and auto hazards. Part 500 defines auto hazard as:

> AUTO HAZARD means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:
>
> 1. Used for the purpose of GARAGE OPERATIONS or
>
> 2. used principally in GARAGE OPERATIONS with occasional use for other business or nonbusiness purposes or
>
> 3. *furnished for the use of any person or organization.*

(emphasis added).

The policy issued by Universal defines who is an insured with respect to an auto hazard. Coverage is provided for the named insured and

> 2. Any of YOUR partners, *paid employees*, directors, stockholders, executive officers, a member of their household or a member of YOUR household, *while using an AUTO covered by this Coverage Part,* or when legally responsible for its use. *The actual use of the AUTO must be by YOU or within the scope of YOUR permission;*
>
> 3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

(emphasis added).

Brock was driving the demonstrator for Kowalski's personal use and at his specific request. Clearly, this use was one contemplated by both Cable Chevrolet and Kowalski.

Paragraph 2 of the omnibus clause above clearly states: "[t]he actual use of the AUTO must be by YOU *or* within the scope of YOUR permission." (Emphasis added). It is not necessary to reach paragraph 3 of the omnibus clause because Brock's actual use of the car was within the scope of the named insured's permission. Paragraph 3 is merely a severable catch-all clause that should be disregarded under the facts of this case.

### 2. *Part 900*

Part 900 of the Universal policy provides for Basic Auto Insurance. Aside from the named insured, those who are insured under this part include:

> b. any other person using an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO within the scope of YOUR permission, unless it is being loaded or unloaded. Only YOUR employee, a borrower, or a borrower's employee is an INSURED for loading and unloading;

Appellant argues that Endorsement No. 038 to the policy, which provides for Auto Lessors Liability, alters Part 900 such that it only provides insurance when the car in question is leased. Endorsement No. 038 reads:

> When AUTO LESSORS LIABILITY is shown in the declarations, the insurance afforded by this Coverage Part is changed as follows, but only with respect to OWNED AUTOS as defined in this endorsement.

Under the endorsement, which is in fact shown in the declarations of Universal's policy, "owned auto" was redefined to limit coverage to "an AUTO YOU own while under LEASE to others."

■ Contrary to appellant's position, Endorsement No. 038 only applies when the owned auto is leased and, because the demonstrator car in this case was not a leased car, the endorsement does not alter the language or intent of Part 900.

Kowalski was clearly covered under the policy as an employee of the named in-

sured. Having established that Brock was driving the demonstrator with the permission of the named insured, Brock should be afforded the same coverage as Kowalski. Since Kowalski would have been a named insured, Brock became an anticipated second permittee and entitled to coverage. The trial court came to this same conclusion. Appellant believes that the trial court failed to consider all of the issues before it. The fact that it did not permit additional evidence on the issue of whether or not Brock fit into the category of a harmed insured was addressed. The issue was before the court and there was evidence was before the court on this subject (the policy and its endorsements). The record supports the trial court's findings which disposes of all issues.

The judgment of the trial court is affirmed.

All concur.