Myron A. and Patricia MICHAEL, Appellants,

v.

Gael L. KOWALSKI, Cable Chevrolet and William D. Vandever, Defendant ad Litem and Legal Representative of Charles Brock, Deceased, Respondents.

No. WD 43389.

Missouri Court of Appeals, Western District.

May 7, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1991.

Application to Transfer Denied Sept. 10, 1991.

Duane J. Fox, Paul G. Schepers, Kansas City, for appellants.

Sylvester James, Jr., Cynthia Dillard, Kansas City, for respondents.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellants, Myron and Patricia Michael appeal from a favorable jury verdict in their action for the wrongful death of their son, Kevin, arising as the result of injuries sustained in an automobile accident.

The accident causing Kevin's death occurred in the early morning hours of May 20, 1984. The previous evening Kevin and Gael Kowalski met at the home of Charles Brock. Throughout the evening and early morning hours, the three men had consumed various alcoholic beverages.

At approximately 6:00 a.m. on May 20, 1984, the three men decided to go to a restaurant for breakfast. The accident occurred as they were driving home. The driver of the car at the time of the accident was disputed at trial.

Charles Brock was also killed in the accident. Gael Kowalski was the only survivor. Mr. Kowalski testified at trial that Chuck Brock was driving as they left the restaurant and the last thing he remembered before the accident was that they were driving quickly. However, Randy Noon, an expert on behalf of Mr. and Mrs. Michael testified that in his opinion, based on an analysis of the accident scene and the injuries received by Mr. Kowalski, Mr. Kowalski had been driving the car at the time of the accident. As a result of the accident, all three men were ejected from the automobile. It was stipulated that the blood alcohol levels of all three men were above the legal limit.

The car that the three men were riding in was a Mazda RX7, owned by Cable Chevrolet. Mr. Kowalski was employed as a salesman for Cable and was driving the car temporarily, a practice used by Cable to market automobiles.

Subsequently, Patricia and Myron Michael brought this wrongful death action against Charles Brock, Gael Kowalski and Cable Chevrolet.

Following a jury trial, judgments were rendered against Kowalski and in favor of Charles Brock and Cable Chevrolet. Damages, without regard to fault, were assessed at $100,000. The jury assessed sixty percent of the fault to Gael Kowalski and forty percent to Kevin Michael.

A motion for new trial filed by the Michaels was overruled and this appeal followed.

Three points are raised on appeal. In their first point, Myron and Patricia Michael allege that the trial court erred in overruling their Motion for New Trial be-

cause at least three of the jurors did not truthfully respond to questions during voir dire which asked whether any juror felt it was wrong to award family members monetary damages for the death of a loved one.

During voir dire, the following colloquy occurred:

[Plaintiffs' Counsel]: First of all, this is a wrongful death lawsuit. By that I mean the parents of the decedent Kevin Michael are seeking damages for the loss of their son. And they will be seeking damages in excess of a million dollars for the loss of their son and involving that will not be any seeking of loss of income. By that I mean they are not going to ask the jury to compensate them for any lost earnings that they might have experienced from loss of their son, but rather to companionship and comfort and support and those types of things. Given that, that is the nature of the claim, is there anyone in the jury that feels like the cause of action like that, the lawsuits like that where the parents seek compensation, non-economic compensation for damages for loss of their son, is there any member of the jury would feel that that's not the type of thing that should be done? Okay. Is there any member of the jury that would have any—jury panel that would have any reservations about awarding damages to the parents for loss of their 19 year old son if the evidence supports—if the evidence and law supports such an award.

[Defense Counsel]: Court please, object.

The Court: Come forward.

(At this point in the proceedings, there was a discussion between the court and counsel at the bench and out of the hearing of the jury.)

[Defense Counsel]: I object to the form of that question, your Honor, and to the question itself in view of the previous question that Mr. Fox had asked the jury to the effect that if any of the jurors had a reason why they couldn't hear and try these issues. Now he's trying to get the commitment from them that they would be willing to return a verdict, and I think

that's the wrong way to ask the question and it's repetitious.

[Plaintiffs' Counsel]: I in no way want to seek the commitment, so I withdraw the question.

Following the trial, appellants' attorney contacted and interviewed the jurors. An affidavit was obtained from Juror Melia Duncan in which she stated that she had listened to and understood all the voir dire questions and that she felt it was wrong to seek money damages for the loss of a son.

Additionally, appellants' attorney submitted his own affidavit in which he detailed what had been told him during his interviews with certain jurors. In the affidavit, appellants' attorney indicated that Jurors Donna Judeman and Linda Smith both expressed to him that they had understood all questions asked on voir dire, but both believed it was wrong to seek monetary compensation in a wrongful death case such as presented.

From this, plaintiffs argue that at least three jurors, Duncan, Judeman and Smith failed to speak the truth concerning their biases on voir dire, when asked in this regard.

■ It is recognized that the right to a fair and impartial jury is a cornerstone of our judicial system. *Strickland by Carpenter v. Tegeler*, 765 S.W.2d 726, 728 (Mo. App.1989); *Williams by Wilford v. Barnes Hospital*, 736 S.W.2d 33, 36 (Mo. banc 1987). It is the duty of a juror on voir dire to fully, fairly and truthfully answer all questions. *Id.*

■ In the case at bar, it is unnecessary to dwell on the merits of whether or not jurors Duncan, Judeman and Smith failed to speak the truth on voir dire, or the validity of counsel's affidavit. A review of the record presented in regard to what transpired on the particular voir dire question complained of, reveals that counsel allowed what he argues were two separate inquiries to run together into a single question that ultimately was objected to and thereafter withdrawn. No juror misconduct can be said to have occurred by the

jurors' failure to truthfully answer a question which was ultimately withdrawn.

Point one is denied.

In point two, appellants argue that the trial court erred in giving Instruction No. 9, requested by Gael Kowalski, which allowed the jury to assess a percentage of fault to Kevin Michael for riding in a car driven by Kowalski. Appellants contend that said instruction directly contradicted Kowalski's testimony that he was not the driver of the car at the time of the accident. They argue that it is inconsistent for Kowalski to deny driving the car, but at the same time accuse Kevin Michael of negligently riding in a car driven by Kowalski.

■ Appellants' cited authority intimates a misapplication of the law. They cite cases which stand for the proposition that a plaintiff may not instruct on a hypothesis directly contrary to his or her own position. *See, e.g., Samuels v. Klimowicz,* 380 S.W.2d 418 (Mo.1964); *Brady v. Black and White Cab Co.,* 357 S.W.2d 720 (Mo.App. 1962).

■ However, as argued by respondents, it appears that appellants have overlooked the fundamental principle that it is permissible for a defendant to rely on multiple defenses even though they may be inconsistent. *Young v. Kansas City Power & Light Co.,* 773 S.W.2d 120, 126 (Mo. App.1989). In fact, a defendant must plead all defenses available even though they are inconsistent. *Id.* Moreover, while a plaintiff may not predicate recovery upon a theory which is contrary to his own positive evidence, a defendant pleading both a general denial and comparative fault, as did Kowalski herein, has the right to submit comparative fault to the jury even though the issue contradicts some of the defendant's own positive evidence. *Tomlin v. Alford,* 351 S.W.2d 705, 711 (Mo.1961).[1]

The cases cited by appellants are not dispositive. No error occurred, in view of the controlling case law, by the submission of Instruction No. 9.

Point two is denied.

■ In their final point, appellants argue that the trial court erred in excluding evidence which would have shown that Gael Kowalski had the permission of Cable Chevrolet to use the car. Their position is that such evidence tended to show that Gael Kowalski was acting in the course and scope of his employment with Cable Chevrolet at the time of the accident.

This court is directed by appellants to the case of *Universal Underwriters Insurance Co. v. Myron E. Michael,* Case No. CV87–015004, (16th Cir. Jackson County), which involved the same parties as does the present case. In that case, a jury found that if Charles Brock was driving the Cable Chevrolet automobile at the time of the collision, then he was driving the automobile within the scope of permission granted by Cable Chevrolet, the automobile owner, to Gael Kowalski[2]. Appellants argue that this finding, under the doctrine of res judicata and, more specifically, issue preclusion, was binding in this subsequent litigation.

The case referred to by appellants was an action for declaratory judgment brought by Universal Underwriters Insurance Company seeking a declaration as to whether its insurance policy, issued to Cable Chevrolet, provided coverage for William Dirk Vandever as legal representative of Charles Brock, deceased. Following deliberation, the jury found in favor of defendant Brock on the claim of Universal Underwriters for declaratory judgment. In its findings, the court declared:

"That *if* Charles Brock was driving the Cable Chevrolet, Inc. auto at the time of the collision, then he was driving the auto within the scope of permission

1. It is recognized that the *Tomlin* case was well prior to the adoption of the principle of comparative fault and at a time when contributory negligence was the principle in effect. However, the basic concept, for purposes of the present analysis, is unchanged regardless of the change in legal principles. Thus, a discussion

of the inherent differences between these principles is not here warranted.

2. That finding was affirmed by this court in *Universal Underwriters Insurance v. Michael,* 781 S.W.2d 119 (Mo.App.1989).

granted by the auto owner, Cable Chevrolet, Inc., to Gael Kowalski, and Charles Brock was therefore an insured under Universal Underwriters Insurance Company policy no. 485907B." (emphasis added.)

Thus, contrary to appellants' assertion, there was no binding determination in the action for declaratory judgment that Gael Kowalski was acting within the scope and course of his employment at the time of the accident because he was given permission by Cable Chevrolet to use the automobile in question. Rather, the declaratory judgment action merely determined the scope of Cable Chevrolet's insurance policy. Further, the scope of permission as it becomes an issue when determining insurance coverage is a separate and distinct issue from whether Gael Kowalski was operating within the scope and course of his employment at the time of the accident.

The determinations made in the declaratory judgment action were, therefore, not binding in the subsequent litigation.

Point three is denied.

The judgment is affirmed.

All concur.