CAMERON MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

Shannon L. BOLLINGER, Kristopher S. Repp, Amanda E. Repp, and Levi W. Repp, Defendants–Respondents.

No. 17782.

Missouri Court of Appeals, Southern District, Division One.

July 27, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 18, 1992.

Richard K. Kuntze, Oliver, Oliver, Waltz & Cook, P.C., Cape Girardeau, for plaintiff-appellant.

No appearance for respondent Shannon L. Bollinger.

David M. Remley, Thomasson, Dickerson, Gilbert & Cook, Cape Girardeau, for defendants-respondents Kristopher S. Repp, Amanda E. Repp, and Levi W. Repp.

PREWITT, Presiding Judge.

Plaintiff sought a declaratory judgment determining the rights of the parties under a policy of automobile liability insurance it had issued. Plaintiff contended that there was no coverage for injuries sustained by defendants Repp in a collision because defendant Shannon L. Bollinger was operating the insured vehicle without permission of its owners, the named insured under plaintiff's policy. The definition of insured under the policy includes one who is using the vehicle "with the permission of any named insured." Plaintiff appeals from a judgment finding there was coverage.

■ Plaintiff states that the trial court erred in finding that it was obligated to provide coverage to Bollinger by the court "concluding that the actual use of the automobile was with the permission of a named insured because the evidence adduced at

trial conclusively establishes that the use of the vehicle in picking up passengers for transport to church was not by permission and that said use was beyond the scope of the permission granted and did not constitute a minor deviation from the permission granted; the opinion of the trial court was not supported by substantial evidence and was against the weight of the evidence as a whole."

■ Review of this nonjury trial is under Rule 73.01(c). As that rule is interpreted, this court is to affirm the trial court's determination, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). This court sets aside a judgment on the ground that it is against the weight of the evidence only when it has a firm belief that the judgment is wrong. *Looney v. Estate of Eshleman*, 783 S.W.2d 164, 165 (Mo.App.1990).

■ Due regard is given by this court to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2). The trial court is in a better position than this court to determine the credibility of the witnesses, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App. 1979).

■ The trial court may disbelieve testimony even when uncontradicted. *Robinson v. Estate of Robinson*, 768 S.W.2d 676, 677 (Mo.App.1989). All facts upon which no findings are made are presumed found in accordance with the result reached. Rule 73.01(a)(2).

This district said in *Shelter Mutual Ins. Co. v. Baker*, 753 S.W.2d 646, 649 (Mo.App. 1988):

Permissive use of a vehicle under an omnibus clause of an automobile insurance policy may be either express or implied. [citing cases] Among the situations which may show implied permission is a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile. [citing case] Such implied permission is provable by circumstantial evidence.

■ The existence of implied permission to use a vehicle is a factual matter depending upon the facts of each case. *Id.* Comprehensive permission is more readily assumed if the use of the vehicle is for social rather than business purposes and where there is no relationship of employee-employer. *Winterton v. Van Zandt*, 351 S.W.2d 696, 701 (Mo.1961); *Kemp v. MFA Mutual Insurance Co.*, 468 S.W.2d 700, 704 (Mo.App.1971).

The trial court made certain findings of fact which are not disputed. The dispute is whether from those facts the trial court could properly determine that Bollinger was operating the pickup with permission of the Cooks. The findings of fact, omitting numbers of the paragraphs state:

That on the date of the occurrence giving rise to this action, October 3, 1990, Plaintiff Cameron Mutual Insurance Company had in force and effect a certain policy of automobile liability insurance, being Policy Number 24A0277247, which covered a 1987 Ford F–250 Pick up truck;

That on October 3, 1990, that truck was owned by Ronald L. and Imogene Cook, who were also the named insureds under the CMIC policy;

That the policy of insurance contained the following provision:

**III. Definition of Insured.** (a) With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word "insured" includes the names, insured, any resident of the same household, any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by an insured or with the permission of any named insured.

That during the last week of September and Monday, Tuesday and Wednesday, October 1–3, 1990, Defendant Shannon Bollinger was hired by the Cooks to

perform farm labor for them, which included the operation of a tractor for brush hogging and discing at various locations around Sedgwickville, Missouri for which we was to be paid at the rate of $4.00 per hour.

Commencing Sunday, September 30, 1990, Shannon was living temporarily in the Cook household.

On the date of this occurrence, Shannon Bollinger was only 15 years old.

On Monday, October 1, 1990, and Tuesday, October 2, 1990, Shannon was put to work by Mr. Cook performing farm labor, including driving the Cook's brown Chevrolet pick up truck.

On Wednesday, October 3, 1990, after helping Mr. Cook load cattle, without other restrictions of instructions, Mr. Cook instructed Shannon to take the Ford pick up truck insured by CMIC to the yellow barn, a building owned by the Cooks, and brush hog.

On the afternoon of Wednesday, October 3, 1990, there were one or two meetings between Mrs. Cook and Shannon Bollinger during which it became apparent to Mrs. Cook that Shannon had been operating the Ford Pickup truck. At no time during those meetings did Mrs. Cook restrict Shannon's operation of that truck.

After working for 2 to 3 hours, Shannon drove back to the sale barn and then to the Repps' home where he picked up the Repp boys. The four boys went to the sale barn and washed the truck.

Shannon drove the Repps home and returned to the sale barn at which time he did some general clean up of the buildings.

The boys had made arrangements for Shannon to pick up the Repp children to take them to church that night. The church is between the sale barn and the yellow barn also on Route K.

At the intersection of Route K and Route EE which leads to the Repp home,

Shannon and Mrs. Cook met and discussed Shannon's further use of the truck. It is unclear whether Shannon was directed to drive the truck back to the Sale Barn and wait there indefinitely or whether he was also advised that he could or should feed the cattle at the Yellow Barn. In any event, it is certain that he was given permission to continue to drive the truck.

During this meeting, Mrs. Cook did not issue any other instructions or restrictions on Shannon's driving of the truck.

During this meeting, Mrs. Cook did not tell Shannon not to drive the truck nor did she take any steps to prevent Shannon from driving the truck.

After picking up the Repp children, Shannon drove to his own home, which is past the yellow barn, to check his own hogs and then returned to the yellow barn where he fed the Cooks' cattle.

Shannon was in the employ of the Cooks while feeding their cattle.

While returning to the town of Sedgwickville, Missouri, Shannon permitted the truck to leave the road way and overturn.

Shannon Bollinger was not acting as an ordinary employee. He was temporarily residing with the Cooks and was a friend of their son. As the trial court found, the Cooks placed no restrictions on his use of the pickup.

It is not necessary to determine if Bollinger's use of the truck in driving the Repp children was a "minor deviation". See *Auto–Owners Insurance Co. v. McGaugh*, 617 S.W.2d 436, 442 (Mo.App. 1981); *Employers Ins. of Wausau v. Pelczynski*, 153 Wis.2d 303, 451 N.W.2d 300 (Ct.App.1989).[1]

■■■ As there were no restrictions placed upon Bollinger he was not deviating from the express permission given. Permission to use an automobile can be derived from negative, as well as positive, factors. *Universal Underwriters Ins. v.*

---

1. In determining permission under the omnibus clause of an automobile insurance policy some jurisdictions use the "initial permission" rule, see *Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988), others the "new journey" rule, see *Allstate Ins. Co. v. Brackin*, 234 N.J.Super. 102, 560 A.2d 109 (1989).

*Michael,* 781 S.W.2d 119, 123 (Mo.App. 1989). The absence of an explicit restriction is a strong indication that the use is permissive. *Id.* Implied permission can be derived from a lack of objections or specific restraints on the use of a vehicle. *Id.*

It was obvious that by not putting restrictions upon Bollinger the Cooks were aware that he might use the vehicle for purposes other than connected with their farm or the sale barn. Compare *Yorkshire Indemnity Co. of New York v. Collier,* 172 F.2d 116 (6th Cir.1949), cited and discussed in *Kemp,* 468 S.W.2d at 704–705. The circumstances were such that the trial court could properly find permission at the time of the incident.

The judgment is affirmed.

CROW and PARRISH, JJ., concur.