**Bill LUCAS, Plaintiff–Respondent,**

v.

**Boonmee ENKVETCHAKUL and Eiko Enkvetchakul, Defendants– Appellants.**

**No. 16960.**

Missouri Court of Appeals, Southern District, Division Two.

July 2, 1991.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for defendants-appellants.

Thomas Y. Auner, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-respondent.

SHRUM, Judge.

In this promissory note lawsuit the trial court entered a judgment for $30,441.63 for the plaintiff Bill Lucas, holder of the note, against the defendants Boonmee and Eiko Enkvetchakul, makers of the note. The trial court ruled against the defendants on their counterclaim for damages in which they alleged they were induced to invest in an apartment complex (and hence to sign the note) by the plaintiff's fraudulent misrepresentations about the deductibility on their personal income tax return of certain closing costs, construction costs, and the real estate sales commission. The trial court concluded that such representations were misrepresentations of law and, therefore, not actionable; hence, they were not available as an affirmative defense to the claim on the note.

The two questions presented which are dispositive of this appeal are:

(1) Did the trial court err in failing to find that a confidential relationship existed between the parties or in failing to find that the plaintiff had superior knowledge about income tax law (those being recognized exceptions to the rule that misrepresentations of the law are not actionable)?

(2) Did the defendants waive an alleged affirmative defense that the promissory note was based on an illegal consideration?

Because we answer the first question "no" and the second question "yes," we affirm the judgment.

## FACTS

The plaintiff, a licensed real estate broker since 1971 and a licensed insurance broker since 1965, graduated from Southwest Missouri State College in 1964 with a decree in economics and attended law school for one year. He was also licensed by the Commodity Futures Commission of the United States. He was not, however, licensed to sell securities in Missouri.

The defendant Boonmee Enkvetchakul, a physician employed by the Missouri Rehabilitation Center at Mt. Vernon, Missouri, was born in Thailand. He first came to the United States in 1964 and has been a United States citizen since 1980. His wife Eiko was born and reared in Japan. Included in the business experiences of the defendant Boonmee was (a) setting up a medical practice in Warren, Pennsylvania, (b) the purchase of two houses in Pennsylvania (in which transactions he hired an attorney), (c) the purchase of a personal residence and a rental property in Springfield, Missouri (where an attorney was hired), and (d) an investment of $7,000 in a restaurant project in 1985 which resulted in a $4,000 tax loss.

As to the initial business contact between the litigants, the plaintiff testified that the defendant Boonmee had been to his office some months before the transaction in question and "said he wanted to be in some real estate deals, he wanted to become a real estate investor." Boonmee denied this but, in any event, the plaintiff sent the defendants a letter dated December 6, 1985, suggesting the availability of a 50 percent interest in a partnership involving the construction of a 24–unit subsidized housing development. The price was stated to be $310,000 with $65,000 capital required, and sundry projections of income, expenses, and depreciation were included (based on land cost of $35,000 and building cost of $275,000). The letter advised, "It should be a very good investment for you plus an excellent tax shelter."

The defendant Boonmee responded to the December 6 letter by visiting the plaintiff's office to discuss the project. After additional discussions of the project between the plaintiff and both defendants on December 9 and 11, a real estate sales contract was signed by the defendants on December 26, 1985. That contract identified "Crown Heights Apartments Limited, a Missouri Partnership," as seller and identified the plaintiff and the defendants as the buyers of a 50 percent interest "in the

entire project as limited partner." [1] The price for the 50 percent interest was $310,-000 but the contract obligated the buyers (the plaintiff and the defendants) to pay only $65,000 as follows: $25,000 escrowed when the contract was signed, $25,000 payable on completion of the apartment building, and $15,000 (representing the plaintiff's real estate commission) payable when the contract was signed. Thus, the buyers were to pay $40,000 at closing with the defendants' share of the obligation being $36,000. The defendants met their initial $36,000 obligation by issuing a check for $16,000 and by borrowing $20,000 from the plaintiff (that loan being evidenced by a $20,000 promissory note).[2]

Regarding the alleged fraudulent misrepresentations by the plaintiff, the record reveals the following. The defendant Boonmee testified that before he and his wife signed the contract and note, the plaintiff represented that they would be entitled to take as tax deductions one-half of the closing expenses, construction expenses, real estate commission, loan fees, and depreciation. He further testified that he had relied "completely" on the plaintiff's oral representations and the language in the December 6, 1985, letter and the original sales contract. He also testified that he had asked the plaintiff to explain the venture to an attorney and an accountant, but that the plaintiff had replied this was unnecessary because the partnership already had an attorney and an accountant. Both of the defendants testified that the plaintiff had offered to prepare their 1985 tax returns, but they declined because they wanted to continue using H & R Block for this purpose. Finally, the defendant Eiko testified that in March 1986 she had telephoned the plaintiff from an H & R Block office after learning that the commission was not de-

ductible and the plaintiff had replied that perhaps the law had been changed.

The plaintiff testified he would "[n]ever, ever" advise anyone to dispense with legal counsel or accounting advice and that, as a matter of fact, he did advise the defendant Boonmee to see a lawyer and an accountant about the deal. The plaintiff did admit telling the defendants that he "thought" they could deduct loan fees, depreciation, and his commission but not construction costs. He also acknowledged having written several figures dealing with deductions for loan fees, interest, and depreciation on a document given to the defendants before the contract and note were signed by them.

In May 1986, the defendants consulted an attorney, Kenneth Ashlock, about the Crown Heights project. They furnished the attorney with several of the Crown Heights documents, and in several meetings with Ashlock before August 1986 they discussed their inability to deduct the real estate commission on their 1985 income tax return. At some point prior to August 1986, the defendants stopped making payments on the $20,000 note for a period of two to four months.

Actual construction of the Crown Heights apartments began in July 1986. In keeping with the December 1985 contract and after consulting with attorney Ashlock, the defendants proceeded to close the contract by signing an Assignment of Interest in Limited Partnership on August 9, 1986. At the closing, the defendants paid the arrearage on their note, the money initially escrowed was released, and the plaintiff and the defendants received photocopies of their interests in the Crown Heights project. Finally, in January 1987, while still represented by attorney Ashlock, the defendants paid the balance due under the contract ($22,500) and received the orig-

---

1. Although the contract does specifically so provide, the defendant Boonmee testified without contradiction from the plaintiff that he and his wife were to receive 45 percent of the total project (being 90 percent of the one-half interest which was the subject of the contract) and the plaintiff was to receive 5 percent of the total project (10 percent of a one-half interest). That testimony was corroborated by Schedule "F" attached to the contract which called for 90

percent of the real estate commission on the sale to be paid by the defendants and 10 percent to be paid by the plaintiff.

2. The $36,000 initially paid by the defendants represented their 90 percent of the $25,000 escrow funds ($22,500) and their 90 percent of the $15,000 commission ($13,500).

inals of the certificates of interest in the project.

No payments on the note were made after July 1987, and this suit followed. Trial by jury was waived and the trial court issued written findings of fact and conclusions of law. Among the court's conclusions of law was one stating that the plaintiff's misrepresentations about deductibility on the defendants' income tax return of certain expenses of the limited partnership were not actionable representations because they were misrepresentations of law. This appeal followed.

### SCOPE OF REVIEW

Review is under Rule 73.01(c). As that rule is interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we are to affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Plunkett v. Parkin*, 788 S.W.2d 356, 357 (Mo.App.1990).

### ANALYSIS AND DECISION

### MISREPRESENTATIONS OF LAW NOT ACTIONABLE; EXCEPTIONS

In Point I of their brief, the defendants assert that the "gravamen" of their counterclaim was the plaintiff's alleged misrepresentations about the deductibility of the real estate commission and other expenses. In Point II, they claim those same representations support their affirmative defense to the plaintiff's effort to collect on the note. It is those representations which the trial court held were not actionable because they were misrepresentations of law.

■ The defendants concede the existence of the general rule that an action for fraud (and also an affirmative defense of fraudulent misrepresentation) cannot be based on misrepresentations of law. *McMullin v. Community Savings Service Corp.*, 762 S.W.2d 462, 464 (Mo.App.1988). That rule is based on the principle that everyone is presumed to know the law and is bound to take notice of the law and,

therefore, in legal contemplation, cannot be deceived by representations concerning the law or permitted to say he has been misled. *Fredrick v. Bensen Aircraft Corp.*, 436 S.W.2d 765, 770 (Mo.App.1968).

■ However, the defendants claim the trial court erred in its findings because of two recognized exceptions to the general rule, namely: (1) the rule does not apply when the parties stand in a confidential relationship, and (2) the rule does not apply when one party is possessed of superior knowledge of the law or claims to be possessed of such superior knowledge and takes advantage of the other party's ignorance to mislead him. *White v. Mulvania*, 575 S.W.2d 184, 192 (Mo. banc 1978); *Mullen v. Fridley*, 600 S.W.2d 125, 128 (Mo. App.1980).

*Confidential relationship exception.* Cases cited by the defendants enunciate the general rule, in one form or another, that a confidential relationship exists when one relies on and trusts another in regard to handling of property and business affairs, thus creating some fiduciary obligations. *Rhoades v. Chambers*, 759 S.W.2d 398, 409 (Mo.App.1988); *Estate of Brown v. Fulp*, 718 S.W.2d 588, 595 (Mo. App.1986); *McKeehan v. Wittels*, 508 S.W.2d 277, 280 (Mo.App.1974). "A confidential relationship is usually found when 'the person in whom confidence is reposed had either control or influence over at least a portion of the transferor's property, finances or business affairs.'" *Kay v. Kay*, 763 S.W.2d 712, 714 (Mo.App.1989), *quoting Crane v. Centerre Bank of Columbia*, 691 S.W.2d 423, 429 (Mo.App.1985). The question presented is always whether trust is reposed and that is a fact issue to be decided by the trier of fact. *Rhoades*, 759 S.W.2d at 409; *McKeehan*, 508 S.W.2d at 280.

The only evidence to which the defendants direct our attention in support of their claim of confidential relationship follows. On cross-examination, the plaintiff was asked if he had "become the agent of Dr. Boon Mee?" A timely objection to that question was sustained. Thereupon, the defendants' counsel asked:

Q. And do you remember that I asked you the question [from deposition], "why did you cancel the contract," [real estate commission contract] and you answered, "Because I became the agent of Dr. Boon Mee and myself?"

\* \* \* \* \* \*

A. That's the way I answered it, yes.

Q. Was that true then?

A. It was true then and it's true now.

From the foregoing the defendants appear to claim that a fiduciary (or confidential) relationship was established, as a matter of law, between the parties. We disagree.

 The critical element which establishes the existence of an agency relationship is the right to control the conduct of the agent in the performance of the service for the principal. *See Restatement (Second) of Agency* § 2 (1958). "It is the element of control and the extent of that control which must be shown to establish an agency." *Scott v. Ford Motor Credit Corp.*, 706 S.W.2d 453, 460 (Mo.App.1985). Statements by the alleged principal which refer to another as its "agent" do not establish an agency where the "whole of the record" fails to establish the agency relationship. *Scott*, 706 S.W.2d at 456, 457, 460. And, although testimony of an agent is competent to establish his agency, *Eyberg v. Shah*, 773 S.W.2d 887, 891 (Mo.App. 1989), the existence of a business relationship does not give rise to a fiduciary relationship or to a presumption of such a relationship. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo.App.1983). A confidential or fiduciary relationship did not necessarily arise because money was borrowed by the defendants from the plaintiff. *See Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42, 53 (Mo. App.1985). We do not find facts in this record that mandate a finding, as a matter of law, that the business relationship between the parties caused the plaintiff to be an agent of the defendants or that a confidential relationship existed between the parties. We decline to hold that the single statement by the plaintiff, "I became the agent of Dr. Boon Mee and myself," required a finding that a confidential relationship existed between these parties when that statement is viewed in light of the entire record.

The cases [3] cited by the defendants are not persuasive. In each of those cases the party charged with the misrepresentations was actively involved in managing the business affairs of the other party and, in two cases, the parties were either incapacitated (the *Estate of Brown*) or in poor health (*Rhoades*). Here, the defendant Boonmee was a well-educated professional, experienced in business, dealing at arms length on a single business venture in which he and Eiko were seeking a tax shelter.

Because the trial court made no specific findings of fact relating to any confidential relationship between the parties, we must adhere to the rule that "[w]here the trial court makes no findings of fact with respect to a particular issue ... the court of appeals will resolve all fact issues in accordance with the [trial] court's judgment and will affirm it if it can be supported on any theory of law in accordance with the evidence. Rule 73.01(a)(2)." *Young v. Ray America, Inc.*, 673 S.W.2d 74, 78 (Mo. App.1984). Following that standard, we find that the record supports the determination implicit in the judgment that no confidential relationship existed between the parties.

 *Superior knowledge of the law exception.* The defendants argue that because the plaintiff was licensed as an insurance and real estate broker, because he was licensed by the U.S. Commodities Futures Commission, and because he had a university degree in economics and had at-

---

**3.** *Kay*, 763 S.W.2d at 714 (constructive trust sought for mother-son transaction; no confidential relationship proven); *Rhoades*, 759 S.W.2d at 409 (will contest—judgment affirmed that confidential relationship existed between cousin and decedent who had been in bad health); *Estate of Brown*, 718 S.W.2d at 596 (discovery of assets case; confidential relationship found where Fulp "attended to all [decedent Brown's] affairs"), and *McKeehan*, 508 S.W.2d at 281 (confidential relationship existed between investment company and plaintiff where plaintiff relied on and trusted the company in a series of transactions).

tended law school for one year, it would not be unreasonable to credit him with superior knowledge of taxation. They claim this is particularly true when the plaintiff professed to have such knowledge by his letter representing that the Crown Heights project would be "an excellent tax shelter" and by his offer to prepare the defendants' 1985 tax return.

We agree that the record would have permitted the trial court to find that the plaintiff had superior knowledge. However, there was also substantial evidence to support the finding implicit in the trial court's judgment that the defendants did not understand the representations to be informed statements of law and that the plaintiff did not have superior knowledge. Such evidence is found from the fact that the defendant Boonmee was well educated, he was a licensed physician who had been involved in varied business transactions, and he had initiated the contact with the plaintiff. If the trial court believed the plaintiff's testimony, he advised the defendants before they became involved to see a lawyer and an accountant about the deal. Finally, we do not believe that offers by the plaintiff to prepare the defendants' 1985 tax return compels a finding that the plaintiff was professing superior knowledge of the tax laws.

The defendants cite us to *Hartley Realty Co. v. Casady*, 332 S.W.2d 291 (Mo.App. 1960), where the superior knowledge exception was recognized where there is "much greater, superior knowledge" on the part of one party. *Id.* at 295. The *Hartley Realty Co.* court said it was proper to leave for jury determination whether the "superior knowledge" exception applied where "misrepresentations as to law, even though made innocently, were made to a just retired elderly farmer, who had never completed the 8th grade, by a duly licensed real estate broker and a practicing attorney...." *Id.* at 295. The facts in *Hartley Realty Co.* are clearly distinguishable from the facts before us.

Following the standard set forth by Rule 73.01(a)(2) and *Young*, 673 S.W.2d at 78, we find there is sufficient evidence to sup-port the determination implicit in the trial court's judgment that the "superior knowledge" exception does not apply.

In conclusion, we find no error in the trial court's conclusions that the misrepresentations were not actionable because they were misrepresentations of law.

In Point I, the defendants make two additional claims of trial court error in its denial of the defendants' counterclaim. As part (2) of Point I, the defendants allege error in the trial court's conclusion that the defendants failed to prove that the plaintiff "knew or should have known" that his representations were false. The defendants argue that conclusion erroneously declares and misapplies the law because it was not necessary to prove that the party charged "knew or should have known" of the falsity of his representations, but rather it was only necessary to show that he "knew the representation was false or he was ignorant of its truth or falsity." *See Farr v. Hoesch*, 745 S.W.2d 830, 831 (Mo.App. 1988).

In Part (3) of Point I, the defendants claim trial court error in its conclusion that the defendants waived their claim against the plaintiff by consummating their contract with the seller, Crown Heights Apartments, Ltd.

We reject these arguments as a basis for reversing the trial court's judgment. We have earlier determined that the trial court did not err in its conclusion that the misrepresentations of the plaintiff were not actionable because they were misrepresentations of law. The trial court could have reached its result solely on that basis.

On appeal, our primary concern is the correctness of the result, not the route taken to reach it. *Johnston v. Bates*, 778 S.W.2d 357, 365 (Mo.App.1989). It is unnecessary for us to rule on the correctness of the trial court's conclusions that are challenged in subpoints 2 and 3 of Point I. In a court-tried case, we are to sustain the judgment if the result reached was correct on any tenable basis. *Broadstreets, Inc. v. Shippee*, 695 S.W.2d 521, 522 (Mo.App. 1985). Having determined there is a tena-

ble basis to affirm, we reject these additional arguments.

## FAILURE TO PLEAD ILLEGAL CONSIDERATION AS A DEFENSE

In Point II, the defendants claim the trial court erred in awarding the plaintiff judgment on his note claim because the note was wholly, or in substantial part, unenforceable in that it was based on an illegal consideration and was contrary to public policy. Their argument is that the limited partnership interest was a "security" as defined by the Missouri Uniform Securities Act, § 409.401(1); that the plaintiff was not licensed to sell the "security" as required by the Act; that § 409.201(a) made it unlawful for the plaintiff to sell the "security"; and, because the defendants' note was in part payment of the plaintiff's commission for selling the "security," the consideration for the note was illegal.

 Illegality of contract is an affirmative defense that, under Rule 55.08, the defendants were obliged to plead responsively. *Detling v. Edelbrock,* 671 S.W.2d 265, 271 (Mo. banc 1984). This is especially true where, as here, the alleged illegality arose from some matter extrinsic or collateral to the promissory note, the object of the plaintiff's lawsuit. *Ingalls v. Neufeld,* 487 S.W.2d 52, 54 (Mo.App.1972). The promissory note does not show on its face that it was made in contravention of the Missouri Uniform Security Act and so an affirmative plea was necessary. *See id.* at 54. "Generally, failure to plead an affirmative defense results in waiver of that defense." *Detling,* 671 S.W.2d at 271; *Portman v. Madesco Inv. Corp.,* 760 S.W.2d 457, 460 (Mo.App.1988). Indeed, a defendant must plead all defenses available even though they are inconsistent. *Young v. Kansas City Power and Light Co.,* 773 S.W.2d 120, 126 (Mo.App.1989). Rule 55.08 requires affirmative defenses to be pled in order to give notice to the plaintiff. *Schimmel Fur Co. v. American Indemnity Co.,* 440 S.W.2d 932, 939 (Mo.1969); *World Enterprises, Inc. v. Midcoast Aviation,* 713 S.W.2d 606, 609 (Mo.App.1986).

Clearly, the defendants recognized the need to plead additional facts which would have permitted them to avoid legal liability because they pled affirmatively in their answer, in various paragraphs, fraudulent representations by the plaintiff and failure of consideration for the note. They failed, however, to plead illegality as a defense. If a violation of the Missouri Uniform Securities Act created a defense, they should have pled it as such. Based on long standing rules of pleading, the defendants waived those defenses unless (1) the plaintiff either impliedly or expressly consented to trying the case on that defense, or (2) the trial court permitted the pleadings to be amended to include the defense. Rule 55.33(b).

 We find nothing in this record to indicate that the plaintiff impliedly or expressly consented to trying the case on the defense of illegality. To the contrary, the plaintiff repeatedly objected when the defendants sought to elicit testimony bearing on the Missouri Uniform Securities Act, the plaintiff's lack of licensure under that act, and the terms of the limited partnership contract. The plaintiff's objections were consistently grounded on the lack of relevance to the matters raised in the pleadings. Some of the plaintiff's objections were sustained and some were overruled. However, having seasonably objected to evidence designed to show illegality and application of the Missouri Uniform Securities Act, the plaintiff did not waive those objections by any subsequent cross-examination or offering of countervailing evidence. *Securities Investment Company v. Hicks,* 444 S.W.2d 6, 9 (Mo.App.1969). Consent to the trial of non-pleaded affirmative defenses should not be inferred unless it clearly appears that the plaintiff tacitly agreed to join issues on such defenses. *Detling,* 671 S.W.2d at 271; *Duncan v. Price,* 620 S.W.2d 70, 71 (Mo.App.1981). We conclude that the plaintiff did not impliedly or expressly try this case on the defense of illegality of the consideration. However, we must still consider if the trial court permitted the defendants to amend

their pleadings to include the illegality defense.

Rule 55.33(b) authorizes the trial court, in its discretion, to allow amendment of the pleadings even when the opposing party objects to the evidence. Indeed, Rule 55.33(b) directs the trial court to freely allow such amendments "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action...."

The trial transcript does not make it abundantly clear whether the trial court allowed the defendants to amend their pleadings to include the affirmative defense of illegal consideration. At the close of evidence, the following transpired:

> MR. GANNAWAY: Your Honor, Defendants and Counterclaimant has no other rebuttal evidence, or evidence other than to request as may the Plaintiff also that the pleadings be amended to conform to the evidence.
>
> MR. AUNER: Your Honor, I object to that, I have objected throughout this trial to matters that were not raised by the pleadings, and a good many of my objections you have sustained and I object to any amendment of the pleadings because I believe I've protected the record to prevent that occurrence from happening.
>
> THE COURT: Well, Mr. Gannaway's motion is sustained *as far as matters that were not objected to and excluded* (emphasis added).

The issue is whether the trial court intended by its ruling that the pleadings be amended to include the affirmative defense of illegality of the consideration. If the court did not so intend, then the defense was waived.

In resolving the issue, we find it significant that, in seven pages of findings of fact and conclusions of law, the trial court made specific conclusions of law on all issues framed by the pleadings but makes no mention of an alleged affirmative defense of illegal consideration. The court stated:

> 4. Defendants failed to prove all the elements necessary for their affirmative defenses of fraudulent representation....
>
> 5. Defendants failed to prove their affirmative defense of failure of consideration, and therefore Plaintiff is entitled to judgment against Defendants on Count I of Plaintiff's Petition.

Our review of the record convinces us that the defendants never made it clear to the trial court that they were asserting an affirmative defense of illegal consideration, they never specifically asked that the pleadings be amended to include that defense, and that the trial court never ruled on an affirmative defense of illegal consideration.

Evidence in this case was presented on August 9, August 11, August 15, and October 20, 1989. On most of those days, the defendants offered, or attempted to offer, some evidence which they now claim supported an affirmative defense of illegal consideration. For example, on August 9:

> Q. (to Boonmee): Why did you stop paying Mr. Lucas?
>
> A. Well, ... Mr. Gannaway who was my lawyer, he found out that Mr. Lucas is not a licensed security seller.
>
> MR. AUNER: Object to that in that calls for matters that are not relevant.
>
> A. We did find out.
>
> MR. AUNER: And it's not responsive to the question.
>
> THE COURT: Objection is sustained.

And on August 15:

> Q. (to the Plaintiff): Have you ever been licensed or registered to sell securities in the State of Missouri.
>
> MR. AUNER: Object to the question, it's not relevant to the matters that are raised in the pleadings ... it has nothing to do with this lawsuit.
>
> MR. GANNAWAY: It's quite relevant, Your Honor, and we'll certainly tie this up.
>
> THE COURT: Objection is overruled.
>
> A. (by the plaintiff): No.
>
> \* \* \* \* \* \*
>
> Q. (to the plaintiff): With regard to this particular transaction involving Dr.

and Mrs. Boon Mee, did you receive from the office of the Secretary of State a cease and desist order on behalf of the Commissioner of Securities for the State of Missouri?

MR. AUNER: Object to the question, it's irrelevant to the matters that are raised in the pleading by the parties....

THE COURT: Objection sustained.

Q. (by Mr. Gannaway): Since this particular transaction, Mr. Lucas, have you sold any other securities?

MR. AUNER: I object to the question, assumes facts not in evidence, namely it presumes that Mr. Lucas ever sold any securities which is not in evidence in this case, I object to the form of the question.

THE COURT: Objection is sustained.

Immediately before recessing on August 15, the following record was made:

MR. GANNAWAY: Other than the one accountant ... that's all the Defendant has, except that Tom and I talked prior to starting trial and had an agreement that the Court could take judicial notice of chapter 409 of the statutes unless he called me prior to trial to tell me that he would not agree to that.

MR. AUNER: That is not the agreement, I said I would think about it and I never gave you a response so—I do not agree with that.

THE COURT: Well, the Court can always take judicial notice of statutes. Revised Statutes of Missouri 409?

MR. GANNAWAY: Yes, Your Honor.

THE COURT: Subject to whether or not they're relevant.

MR. AUNER: I would object that they are not relevant in this case.

MR. GANNAWAY: The request is made then ... that the Court take—

THE COURT: And granted.

....

THE COURT: Subject to whether or not it's relevant.

Finally, on October 20, at the conclusion of the trial, the defendants' counsel made the request "that the pleadings be amended to conform to the evidence" without asking specifically to amend the pleadings to add the defense of illegal consideration and without advising the trial court in any other fashion that the defendants were relying on that defense.

With that background, we are convinced the defendants did not make clear to the court their desire to amend their answer to include the affirmative defense of illegal consideration. We are also convinced that the trial court's response that it was sustaining the defendants' motion to amend pleadings "so far as matters that were not objected to and excluded" did not embrace illegal consideration as an affirmative defense and was not intended by the trial court to serve that purpose. It is a fundamental rule that contentions not put before the trial court will not be considered by the appellate court; an appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Strunk v. Hahn,* 797 S.W.2d 536, 549 (Mo. App.1990); *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App.1984).

We hold that the trial court did not permit the defendants to amend their answer to add the affirmative defense of illegality and the court did not err in not permitting the amendment. The evidence bearing on illegal consideration was not properly before the trial court and is not rightly before us for our review. Point II is rejected.

The judgment is affirmed.

FLANIGAN, C.J., and PARRISH, P.J., concur.