STATE of Missouri, ex rel., Jeremiah W. NIXON, Attorney General, Plaintiff/Respondent,

v.

CONSUMER AUTOMOTIVE RESOURCES, INC., a/k/a C.A.R. and William Herbert and Robert Warren, Defendants/Appellants.

No. 64391.

Missouri Court of Appeals, Eastern District, Division Four.

July 19, 1994.

Rehearing Denied Aug. 30, 1994.

Lawrence F. Hartstein, St. Louis, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Jared R. Cone, Asst. Atty. Gen., St. Louis, for respondent.

AHRENS, Judge.

Defendants Consumer Automotive Resources (C.A.R.), William Herbert, and Robert Warren appeal from a summary judgment finding that they had operated a pyramid sales scheme in violation of § 407.400 RSMo 1986 and § 407.405 RSMo 1986.[1] Defendants claim the trial court erred in granting summary judgment against them, in ordering that funds sequestered vest in the State as an equitable fine or forfeiture, and in imposing civil penalties pursuant to § 407.-100.6 without hearing further evidence. We affirm in part and reverse and remand in part.

Defendants promoted a multi-level marketing program known as "The C.A.R. Program" wherein members located persons who wanted to purchase motor vehicles, enrolled them in the program, and earned commissions. Consumers learned about the program at public informational meetings, through a video produced by the corporation, through brochures, and from program mem-

bers. In December, 1992, C.A.R.'s membership included approximately 1400 members from twenty different states.

To participate in the program, a member created a personal income center (PIC) by completing an application form and paying a $190.00 enrollment fee. The PIC was activated when the member sponsored at least one other person in the program. The member earned maximum commissions when two people were sponsored. The member received a one-time direct sales commission of $70.00 for each person the member sponsored and a network management commission of $6.00 a month for each person enrolled by member or any person in the member's "downline pay group". The "downline pay group" was a two wide by ten deep matrix containing a maximum of 2046 PICs. Defendants claim members received commissions as advanced commissions on the sales of cars new members would eventually purchase and not for enrolling new members. Defendants claim funds for advanced commissions came from participating car dealers who paid a 5% commission to C.A.R. on the sale of vehicles to members. Defendants, however, admit that only two cars were sold through the program and that the corporation loaned operating capital to the commission account to pay advanced commissions.

On December 3, 1992, the State filed a petition for a temporary restraining order and preliminary injunctions against defendants C.A.R., William Herbert, individually and as chief executive officer of C.A.R., and Robert Warren, individually and as president of C.A.R.[2] The court issued an *ex parte* temporary restraining order. After a hearing, the court issued a preliminary injunction. On March 15, 1993, the court issued a partial summary judgment finding that the C.A.R. program was a pyramid sales scheme as defined by § 407.400.5 and that defendants violated § 407.405 by offering, selling or attempting to sell the right to participate in a pyramid sales scheme. The summary judg-

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

2. The petition also named Timothy Smith, individually and as sales manager, and John and Jane Doe, as members and marketing representatives of C.A.R., however, they were not served and are no longer parties to this case.

ment order also permanently enjoined defendants from selling memberships in the C.A.R. program and from selling any right to participate in a plan which offered a pecuniary benefit based upon the inducement of additional persons to participate in the plan and unrelated to any quantity of goods, services, or property sold. In addition, the parties were instructed to file briefs on the issues of civil penalties, costs of investigation and prosecution, and the fate of sequestered funds. On May 4, 1993, the trial court issued its order, judgment and decree restating its finding that the C.A.R. program was a pyramid sales scheme, vesting title to sequestered funds in the State of Missouri, and imposing civil penalties on the defendants.

Defendants claim in their first point that the trial court erred in entering a summary judgment and imposing civil penalties against defendants pursuant to § 407.100.6. They argue that the State's summary judgment affidavit was insufficient, that genuine disputes of fact exist, and that the State must prove that an affirmative defense fails as a matter of law.

Our review of an appeal from a summary judgment is *de novo. ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria we use for testing the propriety of summary judgment are no different from those used by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* Since the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *Id.* When considering the appeal, we review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all reasonable inferences. *Id.*

Defendants first argue that the State's summary judgment affidavit was insufficient. They claim the verification signed by the

State's attorney is insufficient for purposes of summary judgment because it does not state that the contents of the pleading are within his personal knowledge nor show that he is competent to testify to the allegations.

Rule 74.04 sets forth the procedures regarding motions for summary judgment. "At any time after the expiration of thirty days from the commencement of the action or after service of a motion for summary judgment by the adverse party, . . . a party may move with or without supporting affidavits for a summary judgment upon all or any of the pending issues." Rule 74.04(a). Motions for summary judgment shall state with particularity each material fact as to which movant claims there is no genuine issue of fact, with specific references to the pleadings, discovery or affidavits. Rule 74.04(c)(1). When affidavits are used in support or opposition to a motion for summary judgment, they shall be based on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show that affiant is competent to testify to the matters stated therein. Rule 74.04(e).

■ The State's motion for summary judgment was supported by attached stipulations of the parties,[3] a trial transcript, and the deposition of William Herbert. In addition, the C.A.R. video tape, the C.A.R. brochure, and the C.A.R. application were admitted by the court as substantive evidence. The State did not file any affidavits. The State's motion for summary judgment is not an affidavit.

Defendants next argue that summary judgment was improper because there are genuine disputes of fact. In support of this contention, defendants cite the State's request for a hearing where the State claimed additional evidence concerning C.A.R.'s possible operation, either in Missouri or in any other state, was essential to the determination as to whether reimbursement should be ordered and civil penalties imposed.

**3.** *The parties stipulated the following: the court could receive and consider as substantive evidence the video tape, the application, the brochure, and automobile agreements between C.A.R. and area automobile dealers; memberships in the C.A.R. program were being offered,* sold and solicited in Missouri; the program had approximately 400 Missouri members and additional members from other states in the United States; and the balances of three C.A.R. bank accounts at the time they were frozen by court order.

A movant is entitled to summary judgment if there is no genuine issue as to material facts and the party is entitled to a judgment as a matter of law. Rule 74.04(c)(3). The movant has the burden to show a right to judgment from facts about which there is no dispute. *ITT* 854 S.W.2d at 378.

The State charged defendants with selling the right to participate in a pyramid sales scheme in violation of § 407.405. This section provides in part: "No person shall, directly or through the use of agents or intermediaries, in connection with the sale or distribution of goods, service, or other property, sell, offer or attempt to sell a participation or the right to participate in a pyramid sales scheme." § 407.405. A pyramid sales scheme is defined in § 407.400(5):

> The term "pyramid sales scheme" includes any plan or operation for the sale or distribution of goods, services or other property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself or others, regardless of number, to participate in the same plan or operation[.]

■ Defendants operated a program whereby members were compensated in direct proportion to the number of members they sponsored. A member received a direct sales commission of $70.00 for each person the member sponsored and a network management commission of $6.00 per month for each person enrolled in the member's downline pay group. Defendants claim these commissions were advanced commissions on the sales of the cars the new members would eventually purchase. According to the plan, participating car dealers would pay to C.A.R. a commission equal to 5% of the sale price of any car sold to a member. The monthly commissions paid to the members, however, depended only upon the number of persons enrolled in their downline pay group and were paid regardless of the number of cars purchased or the amounts received as com-

missions from car dealers. Defendants operated a program where the opportunity to receive a pecuniary benefit was based upon the inducement of additional persons to participate in the program and not contingent upon the quantity of goods, services, or other property sold. The evidence in the record supports the trial court's finding that the C.A.R. program constituted a pyramid scheme as defined in § 407.400.5 and in violation of § 407.405.

Next defendants argue that before the court can grant summary judgment, the State must prove that an affirmative defense fails as a matter of law. Section 407.100.6 sets forth several remedies available to the State against a person who has engaged in an unlawful business practice. The State included the full text of this section in its petition. Among the remedies, § 407.100.6 provides that the court may award to the State a civil penalty of not more than $1000.00 per violation, unless the person who would be liable shows that the violation resulted from a *bona fide* error. Defendants claim the State failed to prove the lack of a *bona fide* error. Defendants raised this affirmative defense for the first time in their reply to the State's motion for summary judgment.

■ Where a defendant has properly raised an affirmative defense, a claimant's right to summary judgment depends upon the non-viability of that defense in addition to the viability of the claimant's claim. *ITT*, 854 S.W.2d at 371. Thus, a claimant moving for summary judgment in the face of a properly pled affirmative defense has the burden to show that the affirmative defense fails as a matter of law. *Id.*

■ Rule 55.08 requires a party raising an affirmative defense to plead the defense. The purpose behind this rule is to give plaintiff notice of the defense. *Lucas v. Enkvetchakul*, 812 S.W.2d 256, 263 (Mo.App.1991). "A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Rule 55.08. An affirmative defense is asserted by pleading additional facts

not necessary to support a plaintiff's case which establish a defense to liability. *ITT*, 854 S.W.2d at 383. Bare legal conclusions fail to inform the plaintiff of the facts relied upon and, thus, fail to further the purpose protected by Rule 55.08. *Id.*

■ Defendants' answer is silent as to any affirmative defenses. Defendants failed to plead the affirmative defense. Generally, failure to plead an affirmative defense results in waiver of that defense. *Lucas*, 812 S.W.2d at 263. Defendants first raised the affirmative defense of *bona fide* error in their reply to the State's motion for summary judgment. In their reply, defendants stated "there is a genuine issue of material fact as to whether defendant's (sic) alleged violations were the result of bona fide (sic) errors, such as whether or not defendants were selling automobiles, or selling a 'purchaser locating service' to automobile dealers." In addition to being untimely, defendants' assertion fails to contain a short and plain statement of the facts relied upon as required by Rule 55.08. Because the affirmative defense was not properly raised, the State did not have the burden to show that it failed as a matter of law.

The trial court did not err in granting summary judgment; the State was entitled to judgment as a matter of law. We will address defendants' additional arguments concerning the imposition of civil penalties and the vesting of sequestered funds in our discussion of the remaining points. Point denied.

Defendants claim in their second point that the trial court erred in finding that sequestered funds vest in the State and not ordering their disbursement to persons who suffered ascertainable losses as a result of defendants' activities. Defendants argue that there is no statutory authority for such forfeiture and that statutes imposing fines and penalties must be strictly construed. We agree.

■ Chapter 407, the Merchandising Practices Act, declares specific merchandising practices, including pyramid schemes, unlawful. Its comprehensive framework includes both remedial and penal provisions. However, none of these provisions authorize the vesting of sequestered funds in the State.

Section 407.100 sets forth several remedies available to the attorney general. Among the remedies authorized is restitution. Section 407.100.4 states that a court may use its discretion in ordering restitution as necessary to restore any person who has suffered an ascertainable loss which may have been acquired through a defendant's unlawful business practices. § 407.100.4. This section delegates to the attorney general the duty to distribute funds to injured persons. In addition, the court may appoint a receiver to insure the payment of any damages ordered through the restitution order. § 407.-100.5.

We believe the trial court should consider exercising its discretion in applying the sequestered funds to a restitution order. The parties stipulated that the funds sequestered were primarily derived from sales of memberships in the C.A.R. program. These funds could provide restitution to individuals who purchased memberships and were harmed by defendants' unlawful business practice. In addition, we believe the trial court should consider examining the claims of defendants' creditors to determine if they suffered ascertainable losses as a result of defendants' unlawful business practice. We note that the State initially agreed with this position. In its petition seeking the sequestering of funds it argued that defendants may waste, expend, or remove funds from the State making them unavailable for restitution. In addition, the State authorized disbursement of funds to some of defendants' creditors, although now it objects.

The State raised three arguments supporting the trial court's order: (1) no one should benefit from his own fraud; (2) funds should not be used to relieve defendants of their personal liability to creditors; and (3) many of the consumers who purchase memberships in the C.A.R. program may have also committed unlawful business practices by soliciting or selling memberships in the pyramid sales scheme.[4] Section 407.100.4 authorizes

---

4. In addition, the State relies on *State v. Meister*, 866 S.W.2d 485 (Mo.App.1993) as support for

restitution to persons who have suffered an ascertainable loss as a result of defendants' unlawful business practices. If the sequestered funds are used for restitution, defendants will not benefit from their unlawful business practices and persons injured will receive relief. The funds sequestered total $111,383.91. These funds would be depleted if restitution was ordered to persons who purchased memberships in the C.A.R. program and creditors who suffered ascertainable losses as a result of defendants' unlawful business practices. The State's remaining concerns could be properly addressed when determining if a person has suffered such a loss and the extent of the loss.

The order of the trial court vesting sequestered funds in the State is reversed and the cause is remanded for further proceedings.

Defendants claim in their final point that the court erred in imposing civil penalties because additional evidence was necessary for the court to make a proper determination as to the amount of civil penalty. Defendants argue that the court must determine whether defendants' actions were willful, knowing, and continuing.

Section 407.100.6 provides in part that a court may award to the State a civil penalty of not more that $1000.00 per violation. § 407.100.6. The imposition of civil penalties is within the discretion of the trial court. *Id.* An appellate court will only interfere with this discretion if it has been manifestly abused. *State v. Church,* 664 S.W.2d 586, 589 (Mo.App.1984).

A defendant may avoid the imposition of civil penalties under § 407.100.6 by showing that the "violation resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid the error." § 407.100.6. Defendants failed to properly raise this defense.

The trial court found that civil penalties were appropriate in view of the magnitude and seriousness of the violations of § 407.405, the lack of a *bona fide* error, and the need to deter the establishment and expansion of pyramid sales schemes. The trial court imposed civil penalties on defendants, jointly and severally, in the amount of $200.00 for each of the 1368 C.A.R. memberships sold at the time of the Temporary Restraining Order, for a total of $273,600.00. The trial court did not abuse its discretion in imposing civil penalties. Point denied.

The judgment is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.

---

vesting the sequestered funds in the State. The State quotes *Meister* for the proposition that forfeiture of proceeds of illegal activities is proper because "the one who commits a crime has no greater interest in the fruits of the crime than the state ..." *Meister,* 866 S.W.2d at 491. The court in *Meister* was applying § 195.140.2(2) which specifically authorizes forfeiture to the State moneys found in close proximity to controlled substances. Chapter 407 does not provide similar authority.