**TITAN CONSTRUCTION COMPANY, Appellant,**

v.

**MARK TWAIN KANSAS CITY BANK, Respondent.**

No. WD 48841.

Missouri Court of Appeals, Western District.

Nov. 22, 1994.

Kevin E. Glynn, Kansas City, for appellant.

Charles A. Weiss, St. Louis, for respondent.

Before SPINDEN, P.J., and
LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

This breach of contract dispute involves construction of a Kansas City apartment complex financed by Mark Twain Kansas City Bank. The bank took over the project and finished it when the developers, Bridgeport Ventures, defaulted. Mark Twain found the work of the general contractor, Titan Construction Company, to be unacceptable and fired it.

Titan claims that Mark Twain made fraudulent misrepresentations and breached its contract. Mark Twain countersued, charging Titan with breach of contract. The jury ruled for Mark Twain on Titan's breach of contract claim and against Titan on Mark Twain's counterclaim for breach of contract. The trial court entered summary judgment for Mark Twain on Titan's claim of fraud against the bank. Titan appeals, and we affirm.

The apartment complex's original developer was a six-person partnership known as Bridgeport Ventures. Thomas Saul, Titan's principal owner and president, was one of Bridgeport Ventures' partners. Mark Twain loaned Bridgeport Ventures $7.5 million for the project. The partners executed a note payable to the bank and secured it with a deed of trust on the property and each partner's personal guarantee. Each partner agreed to assign the construction contract to Mark Twain if Bridgeport Ventures defaulted on the loan.

Bridgeport Ventures and Titan agreed on August 14, 1986, that Titan would be general contractor for the project, and Titan began constructing the apartments. Bridgeport Ventures negotiated a new construction contract with Titan on March 23, 1987, raising the construction cost. In February 1988, Mark Twain agreed to increase its loan to Bridgeport Ventures to $8.2 million. Two days later, Saul withdrew as a partner of Bridgeport Ventures.

In 1987 and 1988, several subcontractors filed mechanic's liens against the project because Titan had not paid them. This placed Bridgeport Ventures in default under its loan agreement with Mark Twain. Although Titan provided a bond against the mechanic's lien claims, it did not pay the subcontractors.

On March 18, 1988, Bridgeport Ventures' remaining partners told Mark Twain that the partnership could not continue the project unless Mark Twain restructured the loan and forgave the interest. They also said that if the bank refused to do this, they would assign the construction contract to it.

Mark Twain did refuse and became actively involved in the project. It discharged the architects and hired Peckham, Guton, Albers & Viets, Inc., (PGAV) to replace them. Discussions between Mark Twain and Bridgeport Ventures continued, and Mark Twain warned that it might foreclose on the property.

On July 22, 1988, Mark Twain accepted a deed in lieu of foreclosure from the partners of Bridgeport Ventures. In exchange for the property and additional collateral pledged by individual partners, Mark Twain released Bridgeport Ventures from its obligations under the loan agreements. On the same day, Mark Twain and Titan entered into a separate contract in which they agreed to proceed under the terms of Titan's March 23, 1987, contract with Bridgeport Ventures. Mark Twain agreed to be responsible as the successor owner of the project, and Titan agreed to complete the project on or before December 1, 1988. Mark Twain retained McCormack, Baron & Associates, Inc., as its representative for the project. After discovering that critical as-built drawings were missing

and that much of the completed work was unacceptable, McCormack Baron decided the project was not progressing satisfactorily. Some of the subcontractors had walked off the job, and Titan lost its bonding. A structural engineer hired by Mark Twain concluded that the buildings were not structurally sound because of concealed defects.

From July 22, 1988, to September 19, 1988, Mark Twain and Titan negotiated problems with schedules, payments, defective and incomplete work and deviations from the plans and specifications. After concluding that the deficient work was extensive and that Titan was not going to correct it, Mark Twain obtained certification from PGAV that good cause existed for terminating Titan's contract. On September 9, 1988, Mark Twain notified Titan of termination of their contract for default. Mark Twain sent Titan a second notice of termination on September 19, 1988.

After terminating Titan's services, Mark Twain formed a limited partnership with McCormack Baron called Bridgeport Apartments Associates. Mark Twain conveyed the property to Bridgeport Apartments Associates but retained a 99 percent ownership interest. McCormack Baron agreed to manage the property for Mark Twain. Mark Twain transferred the property to Bridgeport Apartments Associates on September 28, 1988, and recorded the action on September 30, 1988. Mark Twain hired Neighbors Construction Company to complete the project.

On November 18, 1988, Titan sued Mark Twain City Bank for declaratory judgment, breach of contract and fraud. Titan also sued McCormack Baron, Mark Twain Bank of St. Louis and PGAV for fraud. Mark Twain counterclaimed for breach of contract and filed a third-party claim against Titan's surety, Travelers Indemnity Company, for its refusal to honor a performance bond issued for the project. The circuit court granted summary judgment in favor of all defendants on Titan's fraud claim. Mark Twain and the other defendants settled with Travelers before trial. The breach of contract claims were tried to a jury in September 1993. The jury returned a verdict in favor of Mark Twain on Titan's claim and against Titan on Mark Twain's counterclaim. The trial court entered judgment on those verdicts and overruled all post-trial motions filed by Titan. This appeal followed.

■ In its first of four points on appeal, Titan contends that the trial court erred in overruling its motion for directed verdict, motion for new trial and motion for judgment notwithstanding the verdict because Mark Twain did not name McCormack Baron as a party to its counterclaim against Titan for breach of contract. Titan argues that because McCormack Baron was the general partner of the Bridgeport Apartments Associates which owned the Bridgeport Apartments project, Mark Twain had to include it as a necessary party.

"Contractual obligations 'can only be enforced by one who is a party to the contract or in privity with it.' " *County Asphalt Paving Company v. 1861 Group, LTD.,* 851 S.W.2d 577, 582 (Mo.App.1993) (citation omitted). McCormack Baron was not a party to Titan's and Mark Twain's contract. After Bridgeport Ventures defaulted, Mark Twain succeeded to all of the rights of Bridgeport Ventures as project owner. Titan and Mark Twain entered into a separate agreement for Titan's completing the project. On September 9, 1988, Mark Twain notified Titan that it was in default. Titan ceased work on September 20, 1988, and, on September 28, 1988, Mark Twain conveyed the property to Bridgeport Apartments Associates without assigning its contract with Titan to the limited partnership. McCormack Baron was not a party to Mark Twain's contract with Titan and had no interest in the property when the contract was executed. McCormack Baron was not a necessary party to Mark Twain's counterclaim against Titan.

In its second point, Titan contends that the trial court erred in overruling its post-trial motions in which Titan requested a settlement credit and "set-off" of the $1.2 million Mark Twain received from Travelers before trial. Titan argues that allowing Mark Twain to keep both the settlement proceeds and the amount of the judgment gives it an unwarranted windfall in violation of the common law rule that a party may have only one satisfaction for a claim.

■ The common law defense of prior, full satisfaction is an affirmative defense which must be pleaded and proven. *See Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo.App.1993). An affirmative defense must be pleaded to give the plaintiff notice, and failure to plead it generally results in waiver. *Lucas v. Enkvetchakul,* 812 S.W.2d 256, 263 (Mo.App.1991).

■ Mark Twain settled with Travelers in May 1990, nearly three years before the trial. Titan did not plead the issue of prior satisfaction or the settlement agreement as an affirmative defense to Mark Twain's counterclaim.[1] Titan's failure to raise this matter as an affirmative defense constituted a waiver. Even had Titan properly pleaded the issue, it did not present competent evidence to support such a defense.[2]

In its third point, Titan argues that the trial court erred in admitting the personal financial statements and loan records of Saul, Titan's owner and president, because it was irrelevant and prejudicial. Titan claims that Mark Twain used the evidence to show Titan's and Saul's wealth and Saul's expenditure of large sums on items not related to the apartment project.

■ "Substantial deference is given to the decision of the trial court as to the admissibility of evidence and its decision will not be disturbed absent a showing that it abused that discretion." *McClain v. Petkovich,* 848 S.W.2d 33, 36 (Mo.App.1993). The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* The test for relevancy is whether evidence tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Reed v. Rope,* 817 S.W.2d 503, 510 (Mo.App.1991).

■ Titan focused its claim against Mark Twain primarily on Mark Twain's not paying three payments. Titan alleged that Mark Twain's refusal to pay resulted in Titan's inability to pay its subcontractors and suppliers. Titan also alleged that as a result it lost business and its business reputation. Mark Twain countered with Saul's personal financial statements and loan records to show that he had used funds from Titan's construction account to pay personal obligations instead of the subcontractors. This evidence was relevant to the issue of why Titan's subcontractors had not been paid and to disprove Titan's allegation that Mark Twain's refusal to pay deprived Titan of the funds it needed to pay subcontractors.

■ Whether evidence should be received is a matter within the trial court's sound discretion. *Lawson v. Cooper,* 475 S.W.2d 442, 447 (Mo.App.1972). The trial court did not abuse its discretion in admitting Mark Twain's evidence.

In its final point, Titan asserts that the trial court erred in granting summary judgment for Mark Twain on Titan's claim for fraudulent misrepresentation because genuine issues of material fact were unresolved as to each element of their claim. Titan also claims that the trial court erred in finding that a breach of contract did not constitute fraud except in limited circumstances.

■ Titan's averments claimed three misrepresentations:

(a) Mark Twain, Mark Twain K.C. and [McCormack Baron] advised Titan that they had entered into a partnership for the ownership and completion of the Project following July 22, 1988;

---

1. Titan purported to raise this issue in its motion for remittitur, motion for judgement n.o.v. and motion for set-off, but a motion for remittitur is not an appropriate means of raising an affirmative defense. *See Hall v. Superior Chem. & Fert., Inc.,* 819 S.W.2d 422, 426 (Mo.App.1991). Nor could Titan raise the issue in its motion for j.n.o.v. because it did not raise the issue in its motion for directed verdict. A claim for a "set-off" is an independent action which may be raised as a counterclaim. *See Walihan,* 849 S.W.2d at 179 n. 2 (citing *Buchweiser v. Estate of Laberer,* 695 S.W.2d 125, 129 (Mo. banc 1985)).

2. In support of its contention, Titan attached to its suggestions in support of its post-trial motions an incomplete, unauthenticated document not offered into evidence at trial. We do not consider it.

(b) Mark Twain, Mark Twain K.C. and [McCormack Baron] later misrepresented to Titan that no such partnership existed or would exist and that [McCormack Baron] would function only as a consultant to Mark Twain and Mark Twain K.C.;

(c) Mark Twain K.C., through Ed Enloe, and Mark Twain, through Tom Reeves, advised Titan, through its President, Tom Saul, that it would be bound by the July 22, 1988 agreement and that it would negotiate with good faith on the unresolved items as an incidental part of that agreement with Titan.

Titan did not establish how it relied on these representations and in what manner it was injured as a result of its reliance. Both are necessary to establish fraudulent misrepresentation. *Green v. Green,* 606 S.W.2d 395 (Mo.App.1980).

Because Titan was obligated to continue working on the project pursuant to the July 1988 agreement, any alleged misrepresentations made "following July 22, 1988," could not have been material to whether Titan continued to work on the project. Nor could these representations have been the proximate cause of any injury to Titan. Moreover, the record refutes Titan's contention that it relied on any representations as to the existence of a partnership. Saul testified at his deposition that Titan had acted all along as if it were dealing with the bank as the owner and that Titan had relied on Mark Twain's being the owner of the project.

■■■■ The third allegation, paragraph (c), did not constitute a misrepresentation of fact that would support a claim of fraud. To constitute fraud, the alleged representation must relate to a past or existing fact. *Union Service Company v. Lyons,* 241 Mo.App. 611, 240 S.W.2d 153, 158 (1951). "[T]he mere failure to perform a contract cannot serve as the basis of tort liability[.]" *State ex rel. William Ranni Associates, Inc. v. Hartenbach,* 742 S.W.2d 134, 140 (Mo. banc 1987). Nor does the mere breach of a contract confer a right to sue in tort. To ascertain whether an action is premised on contractual or tort liability, it is necessary to determine the source of the duty claimed to have been violated, and when the duty alleged to have been breached stems from a contract, the breach does not amount to a tort. *Id.*

Titan relies on *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892 (Mo.App.1991). While the *Kincaid* court recognized that fraudulent inducement to enter into a contract and breach of contract are distinct claims not inconsistent with one another, Titan does not contend fraudulent inducement. It contends fraudulent misrepresentation based on breach of contract. *Kincaid* is not applicable. Titan neither alleged nor demonstrated that Mark Twain did not intend to perform under the agreement.

■■■■ Titan's contention that the defendants "broke their promises" that the July 1988 agreement would be followed, including promises that Mark Twain would pay Titan on a monthly basis and negotiate in good faith, is essentially a restatement of its breach of contract claim. The July agreement contained a provision for payment of monthly pay estimates and that "the payment of all other items ... shall be negotiated in good faith by the parties."

The mere breach of a promise or failure to perform does not constitute a misrepresentation of fact, *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1219 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986), or create an action for fraud. *City of Fenton v. Executive International Inn, Inc.,* 740 S.W.2d 338, 339 (Mo.App.1987). The mere contention that Mark Twain "broke promises" pursuant to an agreement did not support a separate claim for fraud. Titan failed to establish the elements necessary to support its fraud claim. The trial court, therefore, did not err in sustaining Mark Twain's motion for summary judgment.

All concur.